UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                   )
BIRKENSTOCK US BIDCO, INC.,        )
BIRKENSTOCK USA, LP, and           )
BIRKENSTOCK IP GMBH,               )
                                   )
                 Plaintiffs,       )
                                   )   Civil Action
v.                                 )   No. 24-cv-10610
                                   )
WHITE MOUNTAIN INTERNATIONAL LLC   )
and AMERICAN EXCHANGE TIME LLC,    )
                                   )
                 Defendants.       )
_____)
```

**MEMORANDUM AND ORDER**

September 4, 2024

Saris, D.J.

**INTRODUCTION**

Plaintiffs Birkenstock US BidCo, Inc., Birkenstock USA, LP, and Birkenstock IP GmbH (collectively, "Birkenstock") bring this action against Defendants White Mountain International LLC and American Exchange Time LLC (collectively, "White Mountain"), alleging that White Mountain has copied and produced "knock-off" versions of its sandals and clogs. In its amended complaint, Birkenstock asserts design patent, trademark, and trade dress infringement claims. White Mountain now moves to dismiss most of Birkenstock's claims for failure to state a claim. After hearing, the Court **ALLOWS** the motion to dismiss Birkenstock's statutory

1

claim under Mass. Gen. Laws ch. 110H, which is unopposed. The motion to dismiss is otherwise **DENIED** as to all other claims.

## BACKGROUND

Birkenstock alleges the following facts in its first amended complaint (Dkt. 6), which are accepted as true for purposes of White Mountain's motion to dismiss.

### I.   Birkenstock's Products

Birkenstock sells footwear products -- most notably sandals and clogs -- across the United States and worldwide. The Birkenstock products pertinent to this matter are the Arizona two-strap sandal ("Arizona"), the Arizona Big Buckle sandal ("Arizona Big Buckle"), the Boston clog ("Boston"), the Mayari toe-loop sandal ("Mayari"), and the Buckley clog ("Buckley").

Birkenstock introduced the Arizona sandal in 1973. The Arizona includes at least the following features, as described in the complaint:

> [A] footbed, with an exaggerated defined rim, that appears wider and more sunken at the heel and tapers so that the front portion appears thinner; with an outsole having sides with a rutted, irregular appearance; a raised wishbone-shaped strip in the front portion of the footbed; and an upper composed of a medial and a lateral pattern piece, each pattern piece sandwiched between the outsole and the footbed on each side of the foot, covering the midsole, with a sharp angle in each piece from the middle of the heel to the top of the instep, where the pattern pieces collectively form two robust straps, one strap across the instep and one strap across the forefoot, where the strap portions of the medial pattern piece are longer, having punched holes and rounded, angled edges, and the strap portions of the

>  lateral pattern piece each having a flat buckle, such that when the straps are fastened, the upper forms a substantially rounded-rectangle cutout in the middle of the forefoot.

Dkt. 6 at 6 ("Arizona Trade Dress"). In the past decade, Birkenstock has sold more than 36 million units of the Arizona in the United States.

Birkenstock introduced the Boston clog in 1976. The Boston includes at least the following features, as described in the complaint:

> [A]n exposed deep-heel section with an embellished defined edge; an open-edged upper with a curved upward-sloping appearance enclosing the forefoot and affixed to the shoe between the footbed and the sole and curved U-shaped cutouts forming an elongated flap-like tongue with vertical parallel cutouts; and a strap with an overall rectangular appearance overlapping the upper and threaded through the vertical parallel cutouts in the tongue, with one end having punch holes affixed to the outside of the shoe by a buckle.

Id. at 7 ("Boston Trade Dress"). In the past decade, Birkenstock has sold more than 4.8 million units of the Boston in the United States.

Birkenstock introduced the Mayari toe-loop sandal in 2009. The Mayari includes at least the following features, as described in the complaint:

> [A] footbed, with an exaggerated defined rim, that appears wider and more sunken at the heel and tapers so that the front portion appears thinner; with an outsole having sides with a rutted, irregular appearance; a raised wishbone-shaped strip in the front portion of the footbed; and an upper composed of five pattern pieces, each sandwiched between the outsole and the footbed on

3

> each side of the foot, where four of the pattern pieces
> form two narrow/thin straps, one strap across the instep
> and one strap across the forefoot, where the strap
> portions of the medial pattern pieces are longer, having
> punched holes and rounded, angled edges, and the strap
> portions of the lateral pattern pieces each have a flat
> buckle, and where the fifth pattern piece is located
> near the big toe, crisscrosses over the forefoot strap,
> and is buried in the raised wish-bone strip.

Id. at 8 ("Mayari Trade Dress"). Since 2014, Birkenstock has sold more than 7.3 million units of the Mayari in the United States.

Since at least 1982, Birkenstock has also used a "bone-pattern design" on the soles of its shoes ("Bone-Pattern Mark"). In 2000, Birkenstock applied to register the Bone-Pattern Mark as a trademark. The United States Patent and Trademark Office ("USPTO") granted the registration on July 30, 2002, issuing Registration No. 2,600,060.

One of Birkenstock's more recent footwear products is the Buckley clog. To protect the design of the Buckley clog, Birkenstock applied for a design patent by filing U.S. Design Patent Application No. 29,708,925, which claims priority to International Design Application No. 35/506,005. On May 18, 2021, the USPTO issued U.S. Design Patent No. D919,257 ("D257 Patent") to Birkenstock.

II. **White Mountain's Products**

White Mountain has sold footwear products in the United States since 1979. Birkenstock alleges that White Mountain's Helga

4

sandal, Bari sandal, Gracie sandal, and Bueno clog infringe on Birkenstock's design patent, trademark, and trade dress rights.

### A. Bueno Clog (Count I)

White Mountain makes, uses, sells, and markets the Bueno clog. Birkenstock alleges in Count I that the Bueno clog infringes the D257 Patent under 35 U.S.C. §§ 271(a), 289. The complaint includes a side-by-side comparison of an image from the D257 Patent and an image of the Bueno clog. See Dkt. 6 at 23.

### B. Bone-Pattern Mark (Count II)

In Count II, Birkenstock alleges that White Mountain uses "unauthorized reproductions, copies, and colorable imitations of Birkenstock's registered Bone-Pattern Mark" in certain White Mountain footwear products, such as the Helga sandal. Birkenstock alleges that such products are likely to cause confusion among consumers in violation of Section 32(1) of the Lanham Act. See 15 U.S.C. § 1114(1). White Mountain does not move to dismiss Count II.

### C. Helga, Bari, and Gracie Sandals (Count III)

White Mountain makes, uses, sells, and markets the Helga, Bari, and Gracie sandals. Birkenstock makes three claims of trade dress infringement under Section 43(a) of the Lanham Act, alleging that: 1) the Helga sandal infringes the Arizona Trade Dress, 2) the Bari sandal infringes the Boston Trade Dress, and 3) the Gracie sandal infringes the Mayari Trade Dress. See 15 U.S.C. § 1125(a). The complaint includes side-by-side images of each of the accused

5

sandals next to Birkenstock's asserted trade dress designs, as shown below:



See Dkt. 6 at 2-3.

**D. State Law Claims (Counts IV, V)**

Based on the conduct described above, Birkenstock also alleges state law claims. Specifically, in Count IV, Birkenstock alleges that White Mountain's unauthorized use of the Bone-Pattern Mark and the Arizona, Boston, and Mayari Trade Dresses constitutes trademark infringement, trade dress infringement, and unfair competition in violation of Mass. Gen. Laws ch. 110H and Massachusetts common law. In Count V, Birkenstock alleges that the

6

same conduct also constitutes unfair competition in violation of Mass. Gen. Laws ch. 93A, §§ 2, 11.

### III. Procedural History

In May 2023, Birkenstock sent demand letters requesting that White Mountain stop selling its allegedly infringing products. In March 2024, Birkenstock filed this suit. White Mountain now moves to dismiss Counts I, III, IV, and V. In its opposition brief, Birkenstock states that it does not oppose dismissal of the portion of Count IV falling under Mass. Gen. Laws ch. 110H, since Birkenstock's Bone-Pattern Mark and its asserted trade dresses are not registered under this chapter. Accordingly, White Mountain's motion to dismiss Birkenstock's statutory claim under Mass. Gen. Laws ch. 110H is **ALLOWED**. The Court addresses the remaining claims below.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state claim, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a

7

context-specific job that compels [the court] to draw on [its] judicial experience and common sense." Schatz v. Republican State Leadership Comm'n, 669 F.3d 50, 55 (1st Cir. 2012) (cleaned up) (quoting Iqbal, 556 U.S. at 679).

## DISCUSSION

### I. Judicial Notice

In its motion to dismiss, White Mountain asks the Court to judicially notice several Birkenstock webpages marketing the sale of the Arizona, Boston, and Mayari products. See Dkt. 13-4 to 13-12. White Mountain argues that the webpages provide "detailed explanations of the utilitarian benefits of each aspect of the designs along with images from multiple viewpoints," and thus are relevant in light of Birkenstock's non-functionality allegations. From White Mountain's view, the webpages speak to the functionality of the Arizona, Boston, and Mayari designs, thereby weighing against a finding of protectable trade dresses.

At the motion to dismiss stage, a district court may "consider only facts and documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Because Birkenstock's complaint neither mentions nor relies on these webpages, the Court will not take judicial notice of them. See Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013) ("On a motion to dismiss, a court

ordinarily may only consider facts alleged in the complaint and exhibits attached thereto").

## II. Design Patent Infringement (Count I)

In Count I, Birkenstock alleges that White Mountain's Bueno clog infringes the D257 Patent. White Mountain moves to dismiss this claim as facially implausible. To state a plausible claim of design patent infringement, the plaintiff must identify the patent, show the patented design, describe the accused product, and state a plausible claim that the resemblance between the patented design and the accused product would deceive an ordinary observer. See Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1363 (Fed. Cir. 2013) (finding design patent infringement claim was sufficiently pled where complaint included pictures comparing patented design and accused product). To warrant dismissal, the patented design and the accused design must be "sufficiently distinct" such that the designs in a side-by-side comparison would appear "plainly dissimilar" to an ordinary observer. Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed. Cir. 2008); see also Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 991 (Fed. Cir. 1993) ("[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement.") (quoting Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

White Mountain points out several differences between the D257 Patent and the Bueno clog. For example, White Mountain contends that the type of stitching, the number of loops the strap passes through, the size of the strap, the ornamentation of the buckle, the thickness of the tongue, and the tread pattern differ between the two designs. However, the Court finds that the overall appearance of the design in the D257 Patent and the overall appearance of the Bueno clog are not plainly dissimilar, as demonstrated by a side-by-side comparison:



| D257 Patent | Bueno Clog |

The Court finds that Birkenstock has made a plausible claim that, based on the similarities between the D257 Patent and the Bueno clog, "it is possible that an ordinary consumer would be confused or deceived into believing that the accused product is the patented design." See Converse Inc. v. Steven Madden, Ltd., 552 F. Supp. 3d 139, 141 (D. Mass. 2021) (denying motion to dismiss infringement claim based on substantial similarities between designs at issue).

Accordingly, the Court **DENIES** White Mountain's motion to dismiss the design patent infringement claim (Count I).

III. **Trade Dress Infringement (Count III)**

Next, White Mountain moves to dismiss Count III on the ground that Birkenstock failed to sufficiently plead trade dress infringement under the Lanham Act. Count III alleges that White Mountain infringed the Arizona, Boston, and Mayari Trade Dresses by producing and selling its Helga, Bari, and Gracie sandals, respectively. As the plaintiff, Birkenstock bears the burden to "clearly identify the trade dress at issue." Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 40 n.9 (1st Cir. 2001). Generally, "trade dress includes the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the consumer." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 35 (1st Cir. 1998) (cleaned up) (quoting Chrysler Corp. v. Silva, 118 F.3d 56, 58 (1st Cir. 1997)). To establish protectable trade dresses, Birkenstock must demonstrate that its Arizona, Boston, and Mayari Trade Dresses are (1) used in commerce, (2) non-functional, and (3) distinctive. Id. at 36. White Mountain does not contest that the Arizona, Boston, and Mayari products are used in commerce. Instead, it argues that Birkenstock's asserted trade dresses do

11

not satisfy the distinctiveness and non-functionality prerequisites for trade dress protection.

### A. Distinctiveness

To survive a motion to dismiss, a trade dress infringement claim must articulate "the specific elements which comprise its distinct dress." Smartling, Inc. v. Skawa Innovation Ltd., 358 F. Supp. 3d 124, 146 (D. Mass 2019) (quoting Landscape Forms v. Columbia Cascade Co., 113 F.3d 373, 381 (2d Cir. 1997) (requiring "a precise expression of the character and scope of the claimed trade dress")). Moreover, "[i]n order to receive trade dress protection, a product must either be inherently distinctive or have acquired secondary meaning." I.P. Lund, 163 F.3d at 39. White Mountain argues that Birkenstock failed to articulate its trade dress with sufficient specificity because it only provided a "laundry list" of sandal and clog design elements "without explaining how these elements are distinctive rather than standard features of sandals and clogs." Dkt. 12 at 12.

For each of the Arizona, Boston, and Mayari footwear products, Birkenstock includes in the complaint an image of the product and a paragraph-long description of the elements comprising the alleged trade dress. See Dkt. 6 at 5-8. The combination of the image and the detailed description of each of the three products sufficiently establishes the boundaries of the asserted trade

12

dresses. Thus, Birkenstock has adequately identified the set of design elements for which it claims trade dress protection.

White Mountain also argues that Birkenstock must demonstrate how each element of the Arizona, Boston, and Mayari Trade Dresses is distinctive. However, "[t]he inquiry into distinctiveness turns on the total appearance of the product, not on individual elements." I.P. Lund, 163 F.3d at 39. Here, Birkenstock has made a plausible claim that the overall appearances of the Arizona, Boston, and Mayari Trade Dresses have acquired distinctiveness by developing "secondary meaning." A trade dress has acquired secondary meaning when "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc., 456 U.S. 844, 851 n.11 (1982). Secondary meaning can be proven by 1) the length and manner of the use of the trade dress; 2) the nature and extent of advertising and promotion of the trade dress; 3) the efforts made to promote a conscious connection by the public between the trade dress and the product's source; 4) the product's established place in the market; and 5) proof of intentional copying. See Yankee Candle, 259 F.3d at 43-44. In its complaint, Birkenstock alleges that its footwear products "have enjoyed tremendous commercial success, with hundreds of millions of dollars in sales annually in the U.S. alone" and that the company "has spent millions of dollars on

13

campaigns to advertise and promote its footwear to the general public." Dkt. 6 at 11. The complaint also includes several examples of Birkenstock's footwear products appearing in media and entertainment, such as the appearance of the Arizona two-strap sandal owned by the character "Weird Barbie" in the movie "Barbie." The Court finds that, at least at this stage in the proceeding, Birkenstock has plausibly alleged that the Arizona, Boston, and Mayari Trade Dresses have acquired secondary meaning, and therefore distinctiveness.

### B. Non-functionality

The Arizona, Boston, and Mayari Trade Dresses are not registered trade dresses. As such, Birkenstock bears the burden of establishing non-functionality of its trade dresses. See 15 U.S.C. § 1125(a)(3); see also TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 30 (2001) (describing "statutory presumption that features [of a product] are deemed functional until proved otherwise by the party seeking trade dress protection"). In general, a design element is considered "functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Inwood Lab'ys, 456 U.S. at 850 n.10. "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." Qualitex

14

Co. v. Jacobson Prod. Co., 514 U.S. 159, 164 (1995). Therefore, "[t]he core inquiry into whether trade dress is functional requires examination of the effects that granting protection to a product will have on the ability of others to compete. . . . The fact that a product contains some functional elements does not, however, preclude Lanham Act protection." I.P. Lund, 163 F.3d at 37.

White Mountain argues that every element of Birkenstock's alleged trade dresses has utilitarian function and therefore the trade dresses are not protectable. White Mountain cites to two cases in which footwear trade dress claims were dismissed for not pleading adequate allegations regarding non-functionality. In Eliya, Inc. v. Steven Madden, Ltd., the Second Circuit held that the complaint in that case "alleged no specific facts that plausibly support[ed] non-functionality" because the elements identified in the trade dress description were "traditionally functional in that they enable the user to put the shoe on and wear it." 749 F. App'x 43, 47 (2d Cir. 2018). In Eliya, Inc. v. Kohl's Corp., a district court similarly dismissed a footwear trade dress claim because "the complaint provide[d] only the most skeletal assertion that the claimed features are non-functional." No. 15-2123, 2016 WL 929266, at *7 (E.D.N.Y. Feb. 22, 2016), report and recommendation adopted, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016). The Eliya cases are distinguishable from this case because the trade dresses in the Eliya complaints described traditional shoe

15

features with well-established functions, such as straps, heel appendages, and woven uppers. Id. ("[C]ommon sense and experience suggest that elements such as the strap, the raised heel appendage, and the woven upper are the features of the shoes that would help the user put them on and keep them on."). Here, the Arizona, Boston, and Mayari Trade Dresses include descriptions of other shoe design features, such as a "footbed," a "wishbone-shaped strip," "curved U-shaped cutouts," a "flap-like tongue," and a "buckle." Dkt. 6 at 6-8. Moreover, the Second Circuit in Eliya, Inc. v. Steven Madden, Ltd. acknowledged that "distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional, and are hence eligible for trademark protection." 749 F. App'x at 47 (quoting Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 222 (2d Cir. 2012)).

The First Circuit has also recognized that a "particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." I.P. Lund, 163 F.3d at 37 (quoting Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1119 (5th Cir. 1991)). Based on the images and the detailed trade dress descriptions included in Birkenstock's complaint, it is plausible that the elements of the Arizona, Boston, and Mayari products are arranged in an arbitrary

16

manner such that the designs constitute non-functional trade dresses. See Dkt. 6 at 6-8. Under First Circuit precedent, and drawing all inferences in Birkenstock's favor, the complaint makes a plausible claim of non-functionality for its three trade dress infringement claims.

Because Birkenstock has plausibly alleged distinctiveness and non-functionality of its trade dresses, the Court **DENIES** White Mountain's motion to dismiss the trade dress infringement claims under the Lanham Act (Count III).

**IV.  Massachusetts Common Law Trademark Infringement (Count IV)**

As stated above, Birkenstock does not contest the dismissal of the portion of Count IV falling under Mass. Gen. Laws ch. 110H. With respect to the common law portion of Count IV, the standard for a trade dress claim under Massachusetts common law is "indistinguishable from the Lanham Act claim[s]." Straumann Co. v. Lifecore Biomedical Inc., 278 F. Supp. 2d 130, 140 (D. Mass. 2003). Moreover, a trade dress claim under Massachusetts common law does not require state registration. Dorpan, S.L. v. Hotel Melia, Inc., 728 F.3d 55, 62 (1st Cir. 2013) ("Trademark users may still gain state law rights to use a trademark either through registration with a state government or through use in that state."). Because the Court denies the motion to dismiss the trade dress claims under

17

the Lanham Act, the Court also **DENIES** White Mountain's motion to dismiss the same claims under Massachusetts common law (Count IV).

## V. Chapter 93A Claim (Count V)

Finally, White Mountain moves to dismiss Birkenstock's Chapter 93A claim. "The standard for trademark infringement under Mass. Gen. Laws ch. 93A, §§ 11 and 110H § 12, and the common law of trademark infringement is essentially the same as that under the Lanham Act." Bos. Granite Exch., Inc. v. Greater Bos. Granite, LLC, No. 11-11898, 2012 WL 3776449, at *5 (D. Mass. Aug. 29, 2012). Because Birkenstock has alleged a plausible claim under the Lanham Act, the Court finds that Birkenstock has also alleged a plausible claim for relief under Chapter 93A.

White Mountain argues that the Chapter 93A claim should be dismissed because Birkenstock failed to allege that White Mountain's activities "occurred primarily and substantially within the commonwealth." See Mass. Gen. Laws ch. 93A, § 11. Although the complaint states that White Mountain's footwear products are sold in stores across the country, the company's headquarters is located in Norwood, Massachusetts. See Dkt. 6 at 4, 20. Regardless, deciding whether the actions constituting the Chapter 93A claim occurred primarily and substantially within Massachusetts is "fact intensive and unique to each case." See Kuwaiti Danish Comput. Co. v. Digital Equip. Corp., 781 N.E.2d 787, 798 (Mass. 2003) (describing that the "judge should, after making findings of fact,

18

and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."). At this stage, the Court declines to dismiss the Chapter 93A claim (Count V) on this ground.

## ORDER

For the reasons stated above, White Mountain's motion to dismiss Birkenstock's statutory claim under Mass. Gen. Laws ch. 110H is **ALLOWED**. The motion to dismiss is otherwise **DENIED** as to all other counts (Count I, Count III, the Massachusetts common law portion of Count IV, and Count V).

SO ORDERED.

/s/   PATTI B. SARIS
Patti B. Saris
United States District Judge