**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BIRKENSTOCK US BIDCO, INC. BIRKENSTOCK USA, LP; and BIRKENSTOCK IP GBMH, | Civil Action No. 1:24-cv-10610 |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| WHITE MOUNTAIN INTERNATIONAL LLC; and AMERICAN EXCHANGE TIME LLC, | |
| Defendants. | |

**SECOND AMENDED COMPLAINT FOR DESIGN PATENT INFRINGEMENT,**
**TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT,**
**AND UNFAIR COMPETITION**

**LEAVE TO FILE GRANTED ON March 25, 2025**

Plaintiffs Birkenstock US BidCo, Inc., Birkenstock USA, LP, and Birkenstock IP GmbH (individually and collectively, "Birkenstock"), allege as follows, upon actual knowledge with respect to themselves and their own acts and upon information and belief as to all other matters:

**NATURE OF THE ACTION**

1.      This is a civil action for design patent infringement under 35 U.S.C. §§ 271 and 289; trademark infringement, trade dress infringement, and unfair competition under 15 U.S.C. § 1051 *et seq*. and Massachusetts law; and unfair and deceptive trade practices under Massachusetts law.

2.      With roots tracing back to the 1700s, Birkenstock has been a leading purveyor of popular footwear for many decades. Its products are sold in approximately 90 countries worldwide, including in the United States over the past 50+ years. Given, among other things, the styling and

quality of Birkenstock's products, its tremendous sales success (with hundreds of millions of dollars annually in the U.S.), its significant and varied high-profile advertising, and widespread unsolicited media attention and praise, Birkenstock and its products have achieved an outstanding reputation in the footwear industry and earned a loyal consumer following. Many of Birkenstock's footwear designs are instantly recognized and highly sought after, including its popular Arizona two-strap sandal (the "Arizona"), Arizona Big Buckle sandal (the "Arizona Big Buckle"), Boston clog (the "Boston"), Mayari toe-loop sandal (the "Mayari"), and Buckley clog (the "Buckley").

3.      Seeking to trade off the goodwill that Birkenstock has worked long and hard to build in its products, as well as the unique association between those products and Birkenstock, Defendants White Mountain International LLC and its parent American Exchange Time LLC (individually and collectively "White Mountain") have systematically copied and produced knock-offs of Birkenstock's highly recognizable, popular, and successful footwear by infringing Birkenstock's (1) U.S. Design Patent No. D919,257 (the "D257 Patent") embodied by its Buckley clog; (2) U.S. Trademark Registration Nos. 2,600,060 and 7,593,347 for its signature bone-pattern sole design; and (3) trade dress rights in its Arizona two-strap sandal, Boston clog, and Mayari toe-loop sandal, e.g.:

| **Birkenstock's Asserted Rights** | **White Mountain's Sandals and Clogs** |
|:---:|:---:|
|  |  |
| *Arizona Sandal Design* | *Helga Sandal* |



*Boston Shoe Design*



*Bari Sandal*



*Mayari Sandal Design*



*Gracie Sandal*



*D257 Patent*



*Bueno Sandal*







*Helga Sandal Outsole*

*Bone-Pattern Marks*

4.    White Mountain could have selected from a vast universe of design elements to create footwear that stood on its own. But instead, it opted to gain instant marketplace recognition and an unfair commercial boost by mimicking Birkenstock and freeriding off its designs, reputation, and goodwill. Birkenstock thus seeks to enjoin White Mountain's unauthorized use of Birkenstock's intellectual property and to recover actual damages, White Mountain's profits, and other relief, including attorney's fees and costs.

## PARTIES

5.    Plaintiff Birkenstock USA, LP is a Delaware company with an address at 251 Little Falls Drive, Wilmington, DE 19808.

4

6.      Plaintiff Birkenstock US BidCo, Inc. is a Delaware company with an address at 100 Wood Hollow Drive, Suite 100, Novato, CA 94945.

7.      Plaintiff Birkenstock IP GmbH is a company organized and existing under the laws of Germany with an office at Burg Ockenfels, 53545 Linz a. Rhein, Germany.

8.      Defendant White Mountain International LLC is a Delaware limited liability company with corporate headquarters at 10 Oceana Way, Norwood, MA 02062 and an address at 20 Whitcher Street, Lisbon, NH, 03585.

9.      Defendant American Exchange Time LLC is a New York limited liability company with an address at 152 West 36th St, Ste 401, New York, NY 10018.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over Birkenstock's state-law claims under 28 U.S.C. § 1367, because those claims are substantially related to Birkenstock's federal claims.

11.     This Court has personal jurisdiction over White Mountain International at least because it is headquartered in this District. Further both Defendants have continuous and systematic affiliations in this District and purposefully promoted, advertised, and distributed products that infringe Birkenstock's trademarks, trade dress, and patented designs in this District, and Birkenstock's causes of action for unfair competition and trademark, trade dress, and design patent infringement arise out of these activities.

12.     Venue is proper in this District under 28 U.S.C. § 1391 for the trademark, trade dress, and unfair competition claims because a substantial part of the events giving rise to Birkenstock's claims occurred in this District (and elsewhere). Venue is proper in this District under 28 U.S.C. § 1400(b) for the design patent claim because White Mountain International's

corporate headquarters is located in this District and because American Exchange Time has a regular and established place of business located in this District.

**BIRKENSTOCK'S ARIZONA, BOSTON, AND MAYARI TRADE DRESS RIGHTS**

13.     With family roots tracing back to 1774 in Germany, Birkenstock is a distinguished purveyor of footwear. Birkenstock began distributing its iconic footwear in the United States in the 1960s. Today, Birkenstock distributes and sells hundreds of styles in roughly 90 countries worldwide.

14.     Birkenstock introduced its Arizona sandal, shown below, in 1973.



15.     The overall appearance of the Arizona sandal includes at least the following features, the combination of which create a non-functional and distinctive trade dress (the "Arizona Trade Dress"): a footbed, with an exaggerated defined rim, that appears wider and more sunken at the heel and tapers so that the front portion appears thinner; with an outsole having sides with a rutted, irregular appearance; a raised wishbone-shaped strip in the front portion of the footbed; and an upper composed of a medial and a lateral pattern piece, each pattern piece sandwiched between the outsole and the footbed on each side of the foot, covering the midsole, with a sharp angle in each piece from the middle of the heel to the top of the instep, where the pattern pieces collectively form two robust straps, one strap across the instep and one strap across the forefoot, where the strap portions of the medial pattern piece are longer, having punched holes and rounded, angled

6

edges, and the strap portions of the lateral pattern piece each having a flat buckle, such that when the straps are fastened, the upper forms a substantially rounded-rectangle cutout in the middle of the forefoot.

16.     The Arizona sandal has been commercially successful. Birkenstock has sold more than 36M units of the Arizona sandal in the United States in the past ten years.

17.     As a result of long and substantial use, sales, advertising, and third-party recognition, the Arizona Trade Dress is widely and instantly recognizable for its unique classic design and is associated with one source, namely Birkenstock.

18.     Birkenstock introduced its Boston clog, shown below, in 1976.



19.     The overall appearance of the Boston clog includes at least the following features, the combination of which create a non-functional and distinctive trade dress (the "Boston Trade Dress"): an exposed deep-heel section with an embellished defined edge; an open-edged upper with a curved upward-sloping appearance enclosing the forefoot and affixed to the shoe between the footbed and the sole and curved U-shaped cutouts forming an elongated flap-like tongue with vertical parallel cutouts; and a strap with an overall rectangular appearance overlapping the upper and threaded through the vertical parallel cutouts in the tongue, with one end having punch holes affixed to the outside of the shoe by a buckle.

20.     The Boston clog has been commercially successful. Birkenstock has sold more than 4.8M units of the Boston clog in the United States since 2014.

21.     As a result of long and substantial use, sales, advertising, and third-party recognition, the Boston Trade Dress is widely and instantly recognizable for its unique classic design and is associated with one source, namely Birkenstock.

22.     Birkenstock introduced its Mayari sandal, shown below, in 2009.



23.     The overall appearance of the Mayari sandal includes at least the following features, the combination of which create a non-functional and distinctive trade dress (the "Mayari Trade Dress"): a footbed, with an exaggerated defined rim, that appears wider and more sunken at the heel and tapers so that the front portion appears thinner; with an outsole having sides with a rutted, irregular appearance; a raised wishbone-shaped strip in the front portion of the footbed; and an upper composed of five pattern pieces, each sandwiched between the outsole and the footbed on each side of the foot, where four of the pattern pieces form two narrow/thin straps, one strap across the instep and one strap across the forefoot, where the strap portions of the medial pattern pieces are longer, having punched holes and rounded, angled edges, and the strap portions of the lateral pattern pieces each have a flat buckle, and where the fifth pattern piece is located near the big toe, crisscrosses over the forefoot strap, and is buried in the raised wish-bone strip.

24.     The Mayari sandal has been commercially successful. Birkenstock has sold more than 7.3M units of the Mayari sandal in the United States since 2014.

25.     As a result of long and substantial use, sales, advertising, and third-party recognition, the Mayari Trade Dress is widely and instantly recognizable for its unique classic design and is associated with one source, namely Birkenstock.

## BIRKENSTOCK'S BUCKLEY CLOG AND THE ASSERTED DESIGN PATENT

26.     Most recently, Birkenstock introduced its Buckley clog.



27.     The Buckley has a wholly new and distinctively unique product design. To protect its rights in the Buckley design, Birkenstock sought and obtained the D257 Patent, titled "Clog."

28.     The D257 Patent was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on May 18, 2021 to Birkenstock. Barbara Storch is listed as the sole inventor of the D257 Patent, which issued from U.S. Design Patent Application No. 29,708,925 (the "'925 Application"), filed on October 10, 2019, claiming priority to International Design Application No. 35/506,005, filed on October 24, 2018.

29.     Birkenstock IP GMBH is the owner of all right, title, and interest in the D257 Patent. The D257 Patent is assigned on its face to Birkenstock Sales GMBH by virtue of an assignment from sole inventor, Barbara Storch, dated April 13, 2021, which was recorded with the USPTO on April 13, 2021, and is available at reel/frame 055910/0534. The D257 Patent was later

assigned by Birkenstock Sales GMBH to Ockenfels Brands GMBH by virtue of an assignment dated February 3, 2022, which was recorded with the USPTO on August 24, 2022, and is available at reel/frame 061233/0518. The D257 Patent was later assigned by Ockenfels Brands GMBH to Plaintiff Birkenstock IP GMBH by virtue of an assignment dated April 14, 2022, which was recorded with the USPTO on October 3, 2022, and is available at reel/frame 061591/0683.

30.      The D257 Patent claims a new, original, and ornamental design for a clog, as shown in the figures of the D257 Patent, reproduced below. A true and correct copy of the D257 Patent, which is valid and enforceable, is attached as **Exhibit A**.





*D257 Patent, Figures 2 and 3*

### BIRKENSTOCK'S BONE-PATTERN DESIGN TRADEMARKS

31.    Additionally, since at least as early as 1982, Birkenstock has used the following unique bone-pattern design on the sole of its shoes. Birkenstock's bone-pattern design is yet another way that consumers and others can and do identify the source of Birkenstock's footwear.

 

32.    On February 17, 2000, Birkenstock applied to register its bone-pattern sole design with the literal element "BIRK." The USPTO granted the registration, under U.S. Registration No. 2,600,060, on July 30, 2002. That registration is incontestable. A true and correct copy of Registration No. 2,600,060 is attached as **Exhibit B**.

33.    On February 13, 2023, Birkenstock applied to register its bone-pattern sole design without the literal element "BIRK." The USPTO granted the registration, under U.S. Registration No. 7,593,347, on December 10, 2024. A true and correct copy of Registration No. 7,593,347 is attached as **Exhibit C**.

34.    As shown above, Birkenstock's rights in the bone-pattern sole design are not limited to the use of the literal element "BIRK" in conjunction with the design; Birkenstock owns federal registrations for the bone-pattern sole design, both with the "BIRK" inscription (Reg. No.

2,600,060) and *without* the "BIRK" inscription (Reg. No. 7,593, 347) (collectively, the "Bone-Pattern Marks").

### BIRKENSTOCK'S MARKETPLACE ACTIVITIES AND SUCCESS

35.    Birkenstock's footwear products have enjoyed tremendous commercial success, with hundreds of millions of dollars in sales annually in the U.S. alone —through a wide variety of retail means, including online, catalogs, and thousands of national, regional, independent, and specialty retailers across the country.

36.    Birkenstock has spent millions of dollars on campaigns to advertise and promote its footwear featuring the Bone Pattern Marks to the general public through virtually every available type of media, including print publications, mailings, and the Internet (*e.g.*, via its own website, its retailers' websites, banner ads, and social media, including *Facebook*, *Twitter*, *Instagram*, *LinkedIn*, and *Pinterest*).

37.    In addition to Birkenstock's own substantial advertising and promotional activities, its footwear designs have received and continue to receive widespread unsolicited media coverage and attention. Among many other things, the footwear designs are routinely sported in myriad colors by dozens of celebrities, including but not limited to Gigi Hadid, Gwyneth Paltrow, Jennifer Lawrence, Whoopi Goldberg, Margot Robbie, Kendall Jenner, Chrissy Teigen, Katie Holmes, Zoë Kravitz, Kristen Stewart, Kristen Bell, Jessica Alba, Cameron Diaz, Britney Spears, Scarlett Johansson, Vanessa Hudgens, Cindy Crawford, Emma Watson, Emma Roberts, Hillary Duff, Sienna Miller, Kirsten Dunst, Elizabeth Olsen, Lucy Hale, Whitney Port, Natalie Portman, Katy Perry, Naomi Watts, Dakota Johnson, Miranda Kerr, Keira Knightley, Emily Ratajkowski, Reese Witherspoon, and Kaia Gerber.



*Gigi Hadid wearing the Arizona Sandal (https://www.whowhatwear.com/gigi-hadid-birkenstock-sandals-outfit)*



*Gwyneth Paltrow wearing the Arizona Big Buckle sandal (https://www.whowhatwear.com/gwyneth-paltrow-birkenstock-outfit/slide2)*



*Kendall Jenner wearing the Boston Shoe (https://people.com/style/kendall-jenner-birkenstock-boston-clog/)*

38.    Recently, Birkenstock's distinctive Arizona two-strap sandals received even more widespread attention by serving as a key plot point and message in Universal Pictures' $1.4+ billion film, *Barbie*. *See* still shot below from the pivotal red-pill-blue-pill choice scene, featuring Kate McKinnon in her role as "Weird Barbie" and Margot Robbie as "Stereotypical Barbie".



*Kate McKinnon holding the Arizona Sandal*
*(https://www.sfchronicle.com/entertainment/article/barbie-movie-birkenstock-sandal-18264704.php)*



*Another frame of Kate McKinnon holding the Arizona Sandal*
*(https://www.spotern.com/en/spot/movie/barbie/416203/birkenstok-sandals-held-by-barbie-kate-mckinnon-in-barbie)*

39.    Even more recently (the night before the original Complaint was filed), Birkenstock's Arizona sandals were prominently featured in the 2024 Academy Awards show, when famed wrestler and actor John Cena presented an Oscar award wearing nothing but the Birkenstock sandals on stage.



*https://www.latimes.com/entertainment-arts/awards/story/2024-03-10/oscars-2024-john-cena-nude-present-costume-design*

40.    Independent third-party publications and websites (*People*, *Glam*, and *SF Chronicle*, to name a few) have focused on Birkenstock's Arizona Big Buckle sandal in rose that Margot Robbie wore in *Barbie*'s closing scene. As reported in *People*:



NEWS    ENTERTAINMENT    ROYALS    LIFESTYLE    STYLEWATCH    SHOPPING                                    SUBSCRIBE

MARGOT ROBBIE

# Margot Robbie's 'Barbie' Character Encountered the Stylish and Comfy Sandals Celebrities Constantly Wear

Her Birkenstock sandals were pink, of course!

By Nicol Natale | Published on July 31, 2023 08:00PM EDT

*We independently evaluate all recommended products and services. If you click on links we provide, we may receive compensation. Learn more.*



https://people.com/margot-robbie-barbie-birkenstock-sandals-7567947

41.    Birkenstock's footwear designs have been styled in collaborations with multiple celebrated designers, including Dior, Marc Jacobs, Manolo Blahnik, Staud, Jil Sander, Central Saint Martins, Heidi Klum, Stüssy, BAPE, Fear of God, Rick Owens, Valentino, Proenza Schouler, and more.

42.    Birkenstock has also won many awards for its footwear, including Peta 2's Libby Award for Most Vegan-Friendly Shoe Company; Footwear Plus's Brand of the Year, Excellence in Design Sandals; American Apparel & Footwear Association's American Image Award; and FN Collaboration of the Year Award.

17

43.    Birkenstock's footwear designs, including those discussed above, are instantly recognized, highly sought after by the general public, and valuable company assets.

### WHITE MOUNTAIN'S UNLAWFUL
### INFRINGEMENT OF BIRKENSTOCK'S RIGHTS

44.    White Mountain is a footwear retailer that has built a segment of its business on copying Birkenstock's industry leading sandals and clogs.

45.    One of White Mountain's products is its women's Bueno clog, shown below, which employs the design claimed in the D257 Patent.



*https://www.whitemountainshoes.com/white-mountain-shoes-bueno-leather-clog.html*

46.    White Mountain sells the Bueno online, including through its own website, QVC.com, and Amazon.com, as well as in retail stores, including Macy's, Belk, DSW, and Shoe Carnival. The Bueno clog retails for between $59.99 and $79.00.

47.    White Mountain also offers products that use Birkenstock's Bone-Pattern Marks, including the Harley Footbed Slide Sandal (SKU W28935), the Action Women's Wedge Sandal (SKU W33135), the Helga Footbeds Sandal (SKU 4897), the Huntington Footbeds Sandal (SKU 9413529), and the Bayhill Leather Footbeds Clog—all of which are shown below.

| | |
|---|---|
| *Harley Footbed Slide Sandal Outsole* |  |
| *Action Women's Wedge Sandal Outsole* |  |
| *Helga Footbeds Sandal Outsole* |  |
| | |



| | |
|---|---|
| *Huntington Footbeds Sandal Outsole* | |
| *Bayhill Clog Outsole* | |

48.    Moreover, White Mountain and its third-party vendors promote and display product listings for White Mountain footwear that use the Bone-Pattern Marks, including the Hayleigh Leather Footbeds Sandal, the Women's Bari Clog, the Women's Bundle Up Mule, the Gracie Footbed Sandal, the Harrington Footbed Sandal, and the Hazy Slide Sandal. Screen captures of those product listings are shown below.



*https://www.whitemountainshoes.com/white-mountain-shoes-hayleigh-leather-sandal?srsltid=AfmBOoqCGkIlOOcKUKTeWv7YC2Xg-0rxRTzLZaFioZaNfPE7R2OY1b2R*



*https://www.supershoes.com/en/womens-white-mountain-bari-22291.html?dwvar_22291_color=Taupe&dwvar_22291_width=M&srsltid=AfmBOoqqSzXfJuIrV5o_rCTnkNWAhy Uvjbh1bJ7ZBaOsoPI4kIeoWlp0*



*https://www.amazon.com/WHITE-MOUNTAIN-Womens-Bundle-Mule/dp/B0D9BVSZ69*



*https://www.belk.com/p/white-mountain-gracie-footbed-sandal/2900430GRACIEW26765.html*



*https://www.macys.com/shop/product/white-mountain-womens-harrington-footbed-sandals?ID=13168724*



*https://www.dsw.com/product/white-mountain-hazy-slide-sandal/504774?activeColor=brown*

49.    White Mountain also offers the Helga sandal, shown below, which copies the Arizona Trade Dress and is offered in many of the same colorways as Birkenstock's Arizona sandal, including gold, light blue, black, denim blue, taupe, green, and brown.



*https://www.whitemountainshoes.com/whitemountain/white-mountain-shoes-helga-leather-sandal.html*

50.    White Mountain also offers its Bari clog, shown below, which copies the Boston Trade Dress, and is offered in many of the same colorways as Birkenstock's Boston clog, including black, taupe, and brown.



*https://www.whitemountainshoes.com/whitemountain/white-mountain-shoes-bari-suede-clog-html.html*

51.    White Mountain offers its Gracie sandal, shown below, which copies the Mayari Trade Dress and is offered in many of the same colorways as Birkenstock's Mayari toe-loop sandal, including the white sole option.



*https://www.whitemountainshoes.com/whitemountain/white-mountain-shoes-gracie-leather-footbed-sandal.html*

52.    White Mountain's infringing products compete directly with Birkenstock's products and are sold in overlapping or adjacent trade channels, including, DSW, Walmart, Famous Footwear, Macy's, Shoe Carnival, and Mercari.

53.    Birkenstock has repeatedly requested that White Mountain stop distributing and selling its infringing products, including via letters sent on May 1 and May 22, 2023. White Mountain has refused to do so.

## INJURY TO BIRKENSTOCK AND THE PUBLIC

54.    By making and selling the infringing Bueno clog, White Mountain has unfairly benefitted from Birkenstock's hard-earned patented design innovations.

55.    White Mountain's unauthorized uses of Birkenstock's Bone-Pattern Marks, Arizona Trade Dress, Boston Trade Dress, and Mayari Trade Dress are likely to cause confusion, mistake, and deception as to the source or origin of White Mountain's footwear, and/or to mislead consumers into believing that White Mountain and/or its footwear products are otherwise affiliated with or sponsored, approved, and/or licensed by Birkenstock and/or its products.

56.    White Mountain has knowingly, willfully, and in reckless disregard leveraged and exploited the substantial goodwill and reputation associated with Birkenstock's intellectual property rights. Through its willful misappropriation of those rights, White Mountain obtained a

substantial unfair competitive advantage by foregoing and freeriding on Birkenstock's significant investments in time and expense that contributed to its highly prized and commercially successful products.

57.    As a direct and proximate result of White Mountain's willful actions, Birkenstock has been, and will continue to be, irreparably harmed unless White Mountain's unlawful conduct is enjoined—particularly because Birkenstock lacks control over the nature and quality of White Mountain's copycat products. There is no adequate remedy at law to redress this harm.

58.    White Mountain's unlawful acts have also damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure the public, who has an interest in being free from confusion, mistake, and deception.

59.    White Mountain has acted knowingly, willfully, in reckless disregard of Birkenstock's rights and in bad faith, as evidenced in part by White Mountain's obvious copying and continued offer and sale of multiple infringing footwear products in the face of Birkenstock's repeated objection.

**COUNT I:**
**Infringement of the D257 Patent (35 U.S.C. §§ 271(a), 289)**

60.    Birkenstock repeats and re-alleges each and every allegation set forth in paragraphs 1-59.

61.    The relevant comparison prior art for the ordinary observer test is designs for clogs that qualify as prior art under 35 U.S.C. 102.

62.    The appropriate ordinary observer is the typical purchaser of the White Mountain Bueno clog.

63.    White Mountain has been, and presently is, directly or indirectly infringing the sole claim of the D257 Patent by making, using, selling and/or offering to sell the Bueno clog within

the United States or importing such products into the United States whose overall visual impression is substantially the same in the eyes of the ordinary observer in light of the prior art as the claimed design of the D257 Patent, as shown below.

**Birkenstock's Patented Design**
**(D919,257 Patent)**



**The Infringing Product**



## COUNT II:
### Trademark Infringement Under Section 32(1) of the
### Lanham Act (15 U.S.C. § 1114(1))

64.    Birkenstock repeats and re-alleges each and every allegation set forth in paragraphs 1-63.

65.    White Mountain's uses in commerce of unauthorized reproductions, copies, and colorable imitations of Birkenstock's registered Bone-Pattern Marks in connection with the sale, offering for sale, distribution, and/or advertising of White Mountain's footwear products are likely

to cause confusion, or to cause mistake, or to deceive in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## COUNT III:
### Trademark and Trade Dress Infringement, False Designation of Origin, Passing Off, and Unfair Competition Under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

66.    Birkenstock repeats and re-alleges each and every allegation set forth in paragraphs 1-65.

67.    Birkenstock's Arizona Trade Dress, Boston Trade Dress, and Mayari Trade Dress are non-functional and distinctive based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition, and were so before White Mountain first sold, offered for sale, distributed, advertised, or promoted its Helga, Bari, and/or Gracie footwear products.

68.    White Mountain's unauthorized uses of the Arizona Trade Dress, Boston Trade Dress, and/or Mayari Trade Dress, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of White Mountain, White Mountain's Helga, Bari, and/or Gracie products, and/or White Mountain's commercial activities by or with Birkenstock. White Mountain's conduct thus constitutes trade dress infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV:
### Common Law Trademark and Trade Dress Infringement and Unfair Competition under Massachusetts Common Law

69.    Birkenstock repeats and re-alleges each and every allegation set forth in paragraphs 1-68.

70.     Birkenstock's registered Bone-Pattern Mark and Arizona Trade Dress, Boston Trade Dress, and Mayari Trade Dress are non-functional and distinctive based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition, and were so before White Mountain first sold, offered for sale, distributed, advertised, or promoted its footwear products.

71.     White Mountain's unauthorized uses of the Bone-Pattern Mark, Arizona Trade Dress, Boston Trade Dress, and/or Mayari Trade Dress, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of White Mountain, White Mountain's footwear products, and/or White Mountain's commercial activities by or with Birkenstock.  White Mountain's conduct thus constitutes common law trademark infringement, trade dress infringement, and unfair competition in violation of and Massachusetts common law.

72.     White Mountain has committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

### COUNT V:
**Massachusetts Unfair and Deceptive Trade Practices (Mass. Gen. L. ch. 93A §§ 2, 11)**

73.     Birkenstock repeats and re-alleges each and every allegation set forth in paragraphs 1-72.

74.     Birkenstock's registered Bone-Pattern Marks and its Arizona Trade Dress, Boston Trade Dress, and/or Mayari Trade Dress are non-functional and distinctive based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition before White Mountain first sold, offered for sale, distributed, advertised, or promoted its products.

75.     White Mountain's unauthorized uses of the Bone-Pattern Marks, Arizona Trade Dress, Boston Trade Dress, and/or Mayari Trade Dress, as described above, are likely to cause

confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of White Mountain, White Mountain's footwear products, and/or White Mountain's commercial activities by or with Birkenstock.  White Mountain's conduct thus constitutes common law trademark infringement, trade dress infringement, and unfair competition in violation of Mass. Gen. L. ch. 93A §§ 2, 11.

76.    White Mountain has committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Birkenstock respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Birkenstock requests entry of judgment against White Mountain on each and every claim for relief as set forth above and award it relief, including the following:

A.    An Order that White Mountain's using, making, selling, and/or offering to sell the Bueno clog within the United States or importing the Bueno clog into the United States infringes the claimed design of the D257 Patent;

B.    An Order that White Mountain's products, as detailed above, infringe Birkenstock's Bone-Pattern Marks, Arizona Trade Dress, Boston Trade Dress, and Mayari Trade Dress, and constitute unfair competition under federal and state law;

C.    A permanent injunction enjoining White Mountain and its officers, directors, agents, servants, affiliates, employees, subsidiaries, parents, licensees, assigns, and customers, and all others acting in concert or participation with them, from further acts of infringement of Birkenstock's D257 Patent, Bone-Pattern Marks, Arizona Trade Dress, Boston Trade Dress, and/or Mayari Trade Dress including:

1.    making, using, offering for sale, selling or importing into the United States products with designs that are substantially the same as the claimed design of the D257 Patent;

2.    offering, promoting, or selling the Helga, Bari, Gracie, and Bueno and/or any product that uses the Birkenstock's Bone-Pattern Marks, Arizona Trade Dress, Boston Trade Dress, Mayari Trade Dress, and/or anything confusingly similar thereto;

3.    representing by any means whatsoever, directly or indirectly, that White Mountain or any of its products or activities are associated, connected, or affiliated with Birkenstock, and/or sponsored, authorized, or licensed by Birkenstock;

4.    effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above; and

5.    aiding, abetting, contributing to, or otherwise assisting anyone in engaging or performing any of the activities referred to in subparagraphs C(1)-(4).

D.    An Order directing White Mountain to, within 30 days after the entry of the permanent injunction, file with this Court and serve on Birkenstock's attorneys a report in writing and under oath setting forth in detail the manner and form in which White Mountain has complied with the injunction;

E.    An Order directing White Mountain to immediately tender to Birkenstock all products, advertisements, promotional materials, and/or any other materials and things that contain or bear the Bone-Pattern Marks, Arizona Trade Dress, Boston Trade Dress, Mayari Trade Dress, and/or anything confusingly similar thereto;

F.     An Order requiring White Mountain to account for and pay to Birkenstock any and all profits arising from the foregoing acts in accordance with 35 U.S.C. § 289, 15 U.S.C. § 1117, and other applicable laws, and increasing such profits, including trebling them, in accordance with 15 U.S.C. § 1117 and other applicable laws;

G.     An Order requiring White Mountain to pay Birkenstock damages in an amount as yet undetermined caused by the foregoing acts in accordance with 35 U.S.C. § 284, 15 U.S.C. § 1117, and the common law of the state of Massachusetts, and trebling such damages in accordance with 15 U.S.C. § 1117 and the common law of the state of Massachusetts;

H.     An Order requiring White Mountain to pay Birkenstock punitive damages in an amount to be determined due to the foregoing willful acts;

I.     An order declaring this to be an exceptional case and awarding Birkenstock its attorney's fees and costs;

J.     An Order awarding pre- and post-judgment interest on the damages caused by White Mountain's infringing activities and other conduct set forth above; and

K.     Such other relief as the Court may deem just and proper.

Dated: March 26, 2025                    Respectfully submitted,

                                         */s/ Cory C. Bell*
                                         Cory C. Bell BBO #705124
                                         FINNEGAN, HENDERSON, FARABOW, GARRETT
                                         & DUNNER, LLP
                                         Two Seaport Lane
                                         Boston, MA 02210-2001
                                         (617) 646-1600
                                         cory.bell@finnegan.com

                                         Douglas A. Rettew (admitted *pro hac vice*)
                                         Elizabeth D. Ferrill (admitted *pro hac vice*)
                                         Maxime I. Jarquin (*pro hac vice* to be filed)
                                         FINNEGAN, HENDERSON, FARABOW, GARRETT
                                         & DUNNER, LLP

901 New York Avenue, N.W.
Washington, D.C. 20001-4413
(202) 408-4000
doug.rettew@finnegan.com
elizabeth.ferrill@finnegan.com
maxime.jarquin@finnegan.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 26, 2025, I electronically filed the forging with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants. Any other counsel of record will receive the foregoing via e-mail in PDF format:

/s/ <i>Cory C. Bell</i>
Cory C. Bell
