**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BIRKENSTOCK US BIDCO, INC., BIRKENSTOCK USA, LP; and BIRKENSTOCK IP GMBH<br><br>       Plaintiffs,<br><br>       - against -<br><br>WHITE MOUNTAIN INTERNATIONAL LLC; and AMERICAN EXCHANGE TIME LLC,<br><br>       Defendants. | Civil Action No. 1:24-cv-10610-PBS |

**DEFENDANTS' ANSWER & AFFIRMATIVE DEFENSES
TO SECOND AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS**

Defendants White Mountain International LLC ("White Mountain") and American Exchange Time LLC ("American Exchange") (collectively, "Defendants", and each a "Defendant"), by its attorneys, Meister Seelig & Fein PLLC, hereby answers the Second Amended Complaint dated March 26, 2025 (Dkt. 88) (the "SAC") filed by Plaintiffs, Birkenstock US BidCo Inc., Birkenstock USA, LP, and Birkenstock IP GmbH (collectively, "Plaintiffs" or "Birkenstock"), as follows.  Unless expressly admitted, Defendants deny each and every allegation of the SAC.

**NATURE OF THE ACTION**

1.      Defendants admit that Plaintiffs purport to assert claims for design patent infringement, trademark infringement, trade dress infringement, unfair competition, and unfair and deceptive trade practices.  Defendants deny that Plaintiffs have stated claims upon which relief may be granted, deny any and all liability therefor, and otherwise deny the allegations set forth in Paragraph 1 of the SAC.

2.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the SAC, and on that basis deny them.

3.      Defendants deny the allegations set forth in Paragraph 3 of the SAC.

4.      Defendants deny the allegations set forth in the first and second sentence of Paragraph 4 of the SAC, and specifically deny that they mimicked Plaintiffs' designs or freerode off Plaintiffs' designs, reputation, or goodwill.  With respect to the third sentence of Paragraph 4 of the SAC, Defendants admit that Plaintiffs seek the relief set forth in that sentence, but deny that Plaintiffs are entitled to any such relief whatsoever.

## PARTIES

5.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the SAC, and on that basis deny them.

6.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the SAC, and on that basis deny them.

7.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of the SAC, and on that basis deny them.

8.      Defendants admit that White Mountain has an address at 30 Whitcher Street, Lisbon, NH, 03585, and deny the remaining allegations set forth in Paragraph 8 of the SAC.

9.      Defendants deny the allegations set forth in Paragraph 9 of the SAC.

## JURISDICTION AND VENUE

10.     Defendants will not contest this Court's jurisdiction over the subject matter of this action, but deny that Plaintiffs have stated claims upon which relief may be granted.

11.     Defendants will not contest this Court's personal jurisdiction over them with respect to this action, but deny that Plaintiffs have stated claims upon which relief may be granted.

12.     Defendants will not contest venue in this District, but deny that Plaintiffs have stated claims upon which relief may be granted.

### BIRKENSTOCK'S ALLEGED ARIZONA, BOSTON, AND MAYARI TRADE DRESS RIGHTS

13.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the SAC, and on that basis deny them.

14.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of the SAC, and on that basis deny them.

15.     The allegations set forth in Paragraph 15 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 15 of the SAC.

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the SAC, and on that basis deny them.

17.     The allegations set forth in Paragraph 17 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 17 of the SAC.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the SAC, and on that basis deny them.

19.     The allegations set forth in Paragraph 19 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 19 of the SAC.

20.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the SAC, and on that basis deny them.

21.     The allegations set forth in Paragraph 21 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 21 of the SAC.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the SAC, and on that basis deny them.

23.     The allegations set forth in Paragraph 23 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 23 of the SAC.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the SAC, and on that basis deny them.

25.     The allegations set forth in Paragraph 25 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in of Paragraph 25 of the SAC.

### BIRKENSTOCK'S ALLEGATIONS REGARDING THE BUCKLEY CLOG AND THE ASSERTED DESIGN PATENT

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the SAC, and on that basis deny them.

27.     The allegations set forth in the first sentence of Paragraph 27 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in the first sentence of Paragraph 27 of the SAC.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations set forth in the second sentence of Paragraph 27 of the SAC, and on that basis deny them.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the second sentence of Paragraph 28 of the SAC, and on that basis deny them.  Defendants further state that the records of the U.S. Patent and Trademark Office ("USPTO"), including with respect to U.S. Design Patent No. D919,257 (the "D257 Patent") and U.S. Design Patent Application No. 29,708,925 (the "'925 Application"), speak for themselves.

29.     The allegations set forth in the first sentence of Paragraph 29 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 29 of the SAC, and on that basis deny them.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 29 of the SAC, and on that basis deny them. Defendants further state that the records of the USPTO and the information set forth on the D257 Patent speak for themselves.

30.     Defendants state that the document attached to the SAC as Exhibit A and the images shown below the allegations at Paragraph 30 of the SAC speak for themselves.  The remaining allegations set forth in Paragraph 30 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants admit that a document is attached to the SAC at Exhibit A that Plaintiffs purport to be a true and correct copy of the D257 Patent, but deny that the D257 Patent is valid and enforceable; lack knowledge or information sufficient to form a belief as to the truth of whether the images shown below the

allegations Paragraph 30 of the SAC show the design claimed in the D257 Patent, on that basis deny them; and deny the remaining allegations set forth in the Paragraph 30 of the SAC.

## BIRKENSTOCK'S ALLEGATIONS REGARDING BONE-PATTERN DESIGN TRADEMARKS

31.     With respect to the allegations set forth in the first sentence of Paragraph 31 of the SAC, Defendants deny that the "bone pattern design" is unique, and deny that Birkenstock has used the "bone pattern design" image shown on the top-right of page 12 of the SAC on the sole of its shoes since as early as 1982. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in the first sentence of Paragraph 31 of the SAC, and on that basis deny them. Defendants deny the allegations set forth in the second sentence of Paragraph 31 of the SAC.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first and second sentences of Paragraph 32 of the SAC, and on that basis deny them, and further state that the records of the USPTO speak for themselves. The allegations set forth in the third sentence of Paragraph 32 of the SAC purport to assert legal conclusions as to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the third sentence of Paragraph 32 of the SAC, and on that basis deny them, and further state that the records of the USPTO speak for themselves. With respect to the allegations set forth in the fourth sentence of Paragraph 32 of the SAC, Defendants state that the document attached to the SAC as Exhibit B speaks for itself.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first and second sentences of Paragraph 33 of the SAC, and on that basis deny them, and further state that the records of the USPTO speak for

themselves.  With respect to the allegations set forth in the third sentence of Paragraph 32 of the SAC, Defendants state that the document attached to the SAC as Exhibit B speaks for itself.

34.    Defendants admit that Birkenstock is the record owner of U.S. Trademark Registration Nos. 2,660,060 and 7,593,347, state that those registrations are subject to cancellation on the grounds set forth at Defendants' Amended Counterclaims Counts VI and VII *infra*, and deny the remaining allegation set forth in Paragraph 34 of the SAC.

### BIRKENSTOCK'S ALLEGED MARKETPLACE ACTIVITIES AND SUCCESS

35.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 35 of the SAC, and on that basis deny them.

36.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the SAC, and on that basis deny them.

37.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the SAC, and on that basis deny them.

38.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the SAC, and on that basis deny them.

39.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of the SAC, and on that basis deny them.

40.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the SAC, and on that basis deny them.

41.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the SAC, and on that basis deny them.

42.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of the SAC, and on that basis deny them.

43.     Defendants deny the allegations set forth in Paragraph 43 of the SAC.

## BIRKENSTOCK'S ALLEGATIONS OF WHITE MOUNTAIN'S ALLEGED UNLAWFUL INFRINGEMENT OF BIRKENSTOCK'S ALLEGED RIGHTS

44.     Defendants admit that White Mountain is a footwear company in the wholesale business, and deny the remaining allegations set forth in Paragraph 44 of the SAC.

45.     Defendants admit only that the image appearing below the allegations of Paragraph 45 of the SAC purports to show a White Mountain product, the women's Bueno clog. Defendants deny the remaining allegations set forth in Paragraph 45 of the SAC.

46.     Defendants admit the allegations set forth in Paragraph 46 of the SAC.

47.     Defendants admit only that they previously offered footwear products using the outsole tread patterns shown in the images on pages 19 and 20 of the SAC, and state that production of their footwear products using such outsole tread patterns fully ceased in 2021. Defendants deny that they presently offer footwear products using such outsole tread patterns, and deny the remaining allegations set forth in Paragraph 47 of the SAC.

48.     Defendants admit only that they previously displayed certain of the images shown on pages 21 through 23 of the SAC on e-commerce product listing pages for White Mountain products, and provided certain of such images to third-party vendors which displayed certain of the images on e-commerce product listing pages for White Mountain products.  Defendants deny the remaining allegations set forth in Paragraph 48 of the SAC.

49.     Defendants admit only that the image appearing below the allegations of Paragraph 49 of the SAC purports to show a White Mountain product, the Helga sandal, and that the Helga sandal is offered in gold, light blue, black, denim blue, taupe, green, and brown. Defendants deny the remaining allegations set forth in Paragraph 49 of the SAC.

50.    Defendants admit only that the image appearing below the allegations of Paragraph 50 of the SAC purports to show a White Mountain product, the Bari clog, and that the Bari clog is offered in black, taupe, and brown.   Defendants deny the remaining allegations set forth in Paragraph 50 of the SAC.

51.    Defendants admit only that the image appearing below the allegations of Paragraph 51 of the SAC purports to show a White Mountain product, the Gracie sandal, and that the Gracie sandal is offered in a white sole option.  Defendants deny the remaining allegations set forth in Paragraph 51 of the SAC.

52.    The allegations set forth in Paragraph 52 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants admit that they engage in wholesale sales of footwear products to DSW, Famous Footwear, Macy's, and Shoe Carnival which sell the products at retail, but deny that any such products are infringing or compete directly with Birkenstock's products.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 52 of the SAC, and on that basis deny them.

53.    Defendants admit that Plaintiffs and/or their counsel have made communications to White Mountain and/or its counsel, including via letters sent on May 1, 2023 and May 22, 2023, asserting infringement allegations and requesting that White Mountain stop distributing and selling certain products.  Defendants deny that Plaintiff's infringement allegations set forth in such communications have merit, deny that White Mountain has sold or distributed or is selling or distributing infringing products, and deny the remaining allegations set forth in Paragraph 53 of the SAC.

## BIRKENSTOCK'S ALLEGATIONS OF
## INJURY TO BIRKENSTOCK AND THE PUBLIC

54.     The allegations set forth in Paragraph 54 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 51 of the SAC.

55.     The allegations set forth in Paragraph 55 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 55 of the SAC.

56.     The allegations set forth in Paragraph 56 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 56 of the SAC.

57.     The allegations set forth in Paragraph 57 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 57 of the SAC.

58.     The allegations set forth in Paragraph 58 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 58 of the SAC.

59.     The allegations set forth in Paragraph 59 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 59 of the SAC.

## COUNT I:
## Alleged Infringement of the D257 Patent
## (35 U.S.C. §§ 271(a), 289)

60.     Defendants repeat and incorporate by reference all of their prior responses to all prior paragraphs of the SAC as though fully set forth herein.

61.     The allegations set forth in Paragraph 61 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 61 of the SAC.

62.     The allegations set forth in Paragraph 62 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 62 of the SAC.

63.     The allegations set forth in Paragraph 63 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 63 of the SAC.

**COUNT II:**
**Alleged Trademark Infringement Under Section 32(1) of the Lanham Act**
**(15 U.S.C. § 1114(1))**

64.     Defendants repeat and incorporate by reference all of their prior responses to all prior paragraphs of the SAC as though fully set forth herein.

65.     The allegations set forth in Paragraph 65 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 65 of the SAC.

**COUNT III:**
**Alleged Trademark and Trade Dress Infringement, False Designation of Origin,**
**Passing Off, and Unfair Competition Under Section 43(a) of the Lanham Act**
**(15 U.S.C. § 1125(a))**

66.     Defendants repeat and incorporate by reference all of their prior responses to all prior paragraphs of the SAC as though fully set forth herein.

67.     The allegations set forth in Paragraph 67 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 67 of the SAC.

68.     The allegations set forth in Paragraph 68 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 68 of the SAC.

**COUNT IV:**
**Alleged Common Law Trademark and Trade Dress Infringement and Unfair Competition**
**under Massachusetts Common Law**

69.     Defendants repeat and incorporate by reference all of their prior responses to all prior paragraphs of the SAC as though fully set forth herein.

70.     The allegations set forth in Paragraph 70 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 70 of the SAC.

71.     The allegations set forth in Paragraph 71 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 71 of the SAC.

72.     The allegations set forth in Paragraph 72 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 72 of the SAC.

**COUNT V:**
**Alleged Massachusetts Unfair and Deceptive Trade Practices**
**(Mass. Gen. L. ch. 93A §§ 2, 11)**

73.     Defendants repeat and incorporate by reference all of their prior responses to all prior paragraphs of the SAC as though fully set forth herein.

74.     The allegations set forth in Paragraph 74 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 74 of the SAC.

75.     The allegations set forth in Paragraph 75 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 75 of the SAC.

76.     The allegations set forth in Paragraph 76 of the SAC purport to assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth in Paragraph 76 of the SAC.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any of the relief they request in Paragraphs A through K of the PRAYER FOR RELIEF section of the SAC.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses and affirmative defenses to the claims contained in the SAC.  By setting forth these defenses and affirmative defenses, Defendants do not assume the burden of proving any fact, issue or element of a cause of action where such burden properly lies with Plaintiffs.

### FIRST DEFENSE

The SAC, in whole or in part and with respect to one or more of the causes of action asserted therein, fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs' claims and/or the remedies sought by Plaintiffs are barred, in whole or in part, by the doctrine of laches.

### THIRD DEFENSE

Plaintiffs' claims and/or the remedies sought by Plaintiffs are barred, in whole or in part, by the doctrine of estoppel.

**FOURTH DEFENSE**

Plaintiffs' claims and/or the remedies sought by Plaintiffs are barred, in whole or in part, by the doctrine of acquiescence.

**FIFTH DEFENSE**

Plaintiffs' claims and/or the remedies sought by Plaintiffs are barred, in whole or in part, by the doctrine of waiver.

**SIXTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of functionality.

**SEVENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of abandonment.

**EIGHTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of naked licensing.

**NINTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' asserted trademarks and trade dresses lack distinctiveness and secondary meaning.

**TENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' asserted trademarks and trade dresses are generic and/or fail to function as trademarks.

**ELEVENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not adequately articulated product design configurations capable of maintaining trade dress rights.

### TWELFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendants' conduct alleged to infringe Plaintiffs' alleged trademark and trade dress rights does not create a likelihood of consumer confusion, mistake, or deception.

### THIRTEENTH DEFENSE

Plaintiffs' claims predicated upon their alleged registered trademarks rights in and to the "Bone-Pattern Marks" under U.S. Trademark Registration Nos. 2,600,060 and 7,593,347 are barred, in whole or in part, because Plaintiffs' U.S. Trademark Registration Nos. 2,600,060 and 7,593,347 are subject to cancellation by this Court pursuant to 15 U.S.C. §§ 1119 (as set forth in greater detail in Defendants' Amended Counterclaims Counts VI and VII *infra*).

### FOURTEENTH DEFENSE

The claim of the D257 Patent is invalid for failing to comply with one or more of the provisions of the Patent Laws of the United States, 35 U.S.C. § 101, et seq., including without limitation, §§ 102, 103, and/or 171.

### FIFTEENTH DEFENSE

Defendants have not and do not infringe, either directly, indirectly, willfully, or in any manner, the claim of the D257 Patent.

### SIXTEENTH DEFENSE

Plaintiffs' claims asserted under Mass. Gen. Laws ch. 93A are barred because Defendants' allegedly unlawful activities have not occurred primarily and substantially within the Commonwealth of Massachusetts.

## SEVENTEENTH DEFENSE

Plaintiffs' claims and/or the remedies sought by Plaintiffs are barred, in whole or in part, because Defendants have acted in good faith with innocent intent at all relevant times, including upon the opinion and advice of counsel.

## EIGHTEENTH DEFENSE

If Plaintiffs are entitled to any monetary recovery, which Defendants deny, the monetary recovery available to Plaintiffs, if any, must be reduced, in whole or in part, due to Plaintiffs' failure to take reasonable steps to mitigate their alleged damages.

## NINETEENTH DEFENSE

If Plaintiffs are entitled to any monetary recovery, which Defendants deny, the monetary recovery available to Plaintiffs, if any, must be reduced under the doctrine of apportionment.

## TWENTIETH DEFENSE

Plaintiffs are barred from recovering treble or punitive damages because Plaintiffs have failed to allege facts sufficient to recover such damages, Defendants' allegedly unlawful activities do not justify an award of treble or punitive damages, and an award of treble or punitive damages is barred, in whole or in part, by the Eighth and Fourteenth Amendments to the U.S. Constitution as constituting excessive fines.

## TWENTY-FIRST DEFENSE

Plaintiffs are not entitled to injunctive relief because any alleged injury to Plaintiffs is not immediate or irreparable, and Plaintiffs have an adequate remedy at law.

## TWENTY-SECOND DEFENSE

Plaintiffs have failed to plead and meet the requirements of 35 U.S.C. § 287 and have otherwise failed to show that they are entitled to any damages.

### TWENTY- THIRD DEFENSE

Upon information and belief, Plaintiffs' claims for damages for alleged infringement are barred in whole or in part due to failure to comply with the marking requirement set forth in 35 U.S.C. § 287.

### TWENTY-FOURTH DEFENSE

Plaintiffs cannot prove that this is an exceptional case justifying an award of attorney fees against Defendants, pursuant to 35 U.S.C. § 285.

### <u>RESERVATION OF ADDITIONAL DEFENSES</u>

Defendants have not completed their investigation and discovery, and thus may have additional defenses and affirmative defenses to Plaintiffs' allegations. Defendants therefore reserve the right to assert such additional defenses and affirmative defenses in the event discovery indicates that such defenses and affirmative defenses are appropriate.

### <u>JURY DEMAND</u>

Defendants respectfully demand a trial by jury of all claims and issues so triable.

## AMENDED COUNTERCLAIMS

1.     Pursuant to Federal Rule of Civil Procedure 13, Defendants/Counter-Plaintiffs, White Mountain International LLC ("White Mountain") and American Exchange Time LLC ("American Exchange") (collectively, the "Counter-Plaintiffs") hereby assert the following amended counterclaims against Plaintiffs/Counter-Defendants, Birkenstock US BidCo Inc., Birkenstock USA, LP, and Birkenstock IP GmbH (collectively, "Counter-Defendants" or "Birkenstock") and avers as follows:

2.     The Counterclaims asserted herein in no way constitute any waiver of any defense asserted by Counter-Plaintiffs.

3.     Counter-Plaintiffs incorporate by reference its answer to the SAC as if fully set forth herein.

## PARTIES

4.     White Mountain is a Limited Liability Company duly organized and existing under the laws of the State of Delaware with a corporate address at 20 Whitcher Street, Lisbon, NH 03585, and a place of business at 437 Turnpike Street, Canton, MA 02021.

5.     American Exchange is a Limited Liability Company duly organized and existing under the laws of the State of New York with a principal place of business located at 1400 Broadway, 18th Floor, New York, NY 10018.

6.     Upon information and belief, and as alleged in the SAC, plaintiff Birkenstock USA, LP, Inc. is a Delaware company with an address at 251 Little Falls Drive, Wilmington, DE 19808.

7.     Upon information and belief, and as alleged in the SAC, plaintiff Birkenstock US BidCo, Inc. is a Delaware company with an address at 100 Wood Hollow Drive, Suite 100,

Novato, CA 94945.

8.     Upon information and belief, and as alleged in the SAC, Birkenstock IP GmbH is a company organized and existing under the laws of Germany with an office at Burg Ockenfels, 53545 Linz a. Rhein, Germany.

## JURISDICTION AND VENUE

9.     These Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 101 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the Lanham Act, 15 U.S.C. § 1119, and the state and common law of the Commonwealth of Massachusetts.

10.     This Court has jurisdiction over the subject matter of these Counterclaims under 28 U.S.C. §§ 1331 and 1338(a).

11.     Birkenstock has submitted to personal jurisdiction in this Court by filing its SAC against Counter-Plaintiffs. This Court also has personal jurisdiction over Birkenstock because, among other things, Birkenstock have purposely availed itself of the rights and benefits of the laws of Massachusetts by engaging in systematic and continuous contacts with Massachusetts such that it should reasonably anticipate being hauled into court here.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

13.     Based on Birkenstock's filing of the SAC and Counter-Plaintiffs' Affirmative Defenses asserted herein, an actual and justiciable controversy has arisen and now exists between Birkenstock and Counter-Plaintiffs as to the infringement and validity of U.S. Design Patent No. D919,257 (the "D257 Patent" or the "Birkenstock Design Patent") and U.S. Trademark Registration Nos. 2,600,060 and 7,593,347.

## COUNT I
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
### *(Massachusetts common law)*

14.     Counter-Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of their Counterclaims as if fully set forth herein.

15.     Counter-Plaintiffs are longtime sellers and distributors of footwear products in the United States.

16.     Counter-Plaintiffs have sold certain of the footwear products that Birkenstock alleges to infringe its intellectual property rights in this action in the United States since the 1990's.

17.     Birkenstock is also a longtime seller and distributor of footwear products in the United States, having sold footwear in the United States for over fifty years according to its SAC (*see* ¶ 2).

18.     Counter-Plaintiffs and Birkenstock, and their respective footwear products, have thus co-existed in the footwear industry for decades.

19.     Throughout their time together in the footwear industry, and despite any arguable similarities in the styles of their respective footwear products, the parties have operated and offered their products in separate market tiers to different classes of customers, with Birkenstock's footwear products offered at high price points in the luxury tier of the footwear market, and Counter-Plaintiffs' footwear products offered at mid-range price points to footwear consumers with an appreciation for value as well as styling, quality, and comfort.

20.     During that period, upon information and belief, there has not been a single instance where any consumer mistakenly believed that any of either party's footwear products emanated from, or was sponsored by, approved by, affiliated with, or otherwise connected to, the

other party.

21.     Moreover, in addition to the parties to this action, countless third parties have also engaged in sales and distribution of footwear products with styles similar to those of Birkenstock's and Counter-Plaintiffs' respective footwear products throughout the decades they have co-existed in the footwear industry, and continue to do so today.

22.     Upon information and belief, Birkenstock never asserted trade dress claims against any third parties engaged in sales and distribution of footwear products with styles similar to those of Birkenstock's and Counter-Plaintiffs' respective footwear products at issue in this litigation prior to 2019, including during a period of *over forty years* following Birkenstock's first use in United States commerce of its alleged Arizona Trade Dress and Boston Trade Dress.

23.     And, upon information and belief, Birkenstock has still never objected to or asserted trade dress claims against the vast majority of third parties that have engaged in sales and distribution of footwear products with styles similar to those of Birkenstock's and Counter-Plaintiffs' respective footwear products at issue in this litigation, and has declined to pursue legal action against nearly all of the third parties that have engaged in sales and distribution of footwear products with styles similar to those of Birkenstock's and Counter-Plaintiffs' respective footwear products at issue in this litigation against which Birkenstock has asserted trade dress claims but which have rejected the claims and continued their sales and distribution of such products.

24.     In addition, throughout their decades of co-existing in the footwear industry, Birkenstock has been fully aware of Counter-Plaintiffs and their footwear products, including certain of Counter-Plaintiffs' products that Birkenstock now alleges to infringe its intellectual property rights in this action.

25.     To wit, over the years, the parties' footwear – including some of the very products that Birkenstock now alleges to infringe its trade dress rights in this action – have been offered for sale at many of the same retailers; the parties have marketed and offered for sale their footwear at many of the same trade shows, often within sight of each other; the parties have also marketed and offered their footwear products on the QVC television network during the same time periods.

26.     During their decades of co-existing and fairly competing in the footwear industry prior to 2021, Birkenstock never raised any objection or legal issue with any of Counter-Plaintiffs' activities or products.

27.     Upon information and belief, in or about February 2021, Birkenstock sold a majority stake of its business to L Catteron, a private equity firm backed by fashion conglomerate Louis Vuitton-Moët-Hennessy, in a transaction valuing Birkenstock at approximately four billion Euros.

28.     Upon information and belief, Birkenstock filed for an initial public offering in September 2023, and began public trading in October 2023.  Birkenstock's IPO has been widely reported unfavorably, including as "lackluster" and "[o]ne of the worst debuts for a billion-dollar deal in a decade".[1]

29.     Upon information and belief, prior to L Catteron's majority-stake acquisition of Birkenstock, Birkenstock never claimed ownership of intellectual property rights in the overall designs or appearances of any of its footwear designs, including any of the trade dresses asserted by Birkenstock in this action.

---

[1] *See* Michigan Journal of Economics article "What Went Wrong With The Birkenstock IPO" dated November 30, 2023, last accessed at https://sites.lsa.umich.edu/mje/2023/11/30/what-went-wrong-with-the-birkenstock-ipo/ on September 17, 2024, and works cited therein.

30.     Indeed, in its initial Registration Statement filed with the SEC in connection with its IPO in September 2023,[2] Birkenstock expressly acknowledged and admitted that it lacks design rights in its footwear products and failed to timely enforce its (now-alleged) intellectual property rights, as well as that it is unable to legally prevent others from selling products that look like its designs:

> "Some our footwear designs, including in several of our core products, are not protected by design patents or other design rights. This may mean that we cannot legally prevent third parties from creating "lookalike" products or products that otherwise use our designs. Beginning in 2018, we modified our approach to IP protection and enforcement and began to more consistently seek to register our design rights and seek to obtain patents on new products and to consistently enforce our IP rights against infringement. However, our ability to enforce our IP rights with respect to counterfeit or infringing products on the market may in some cases be challenged by defendants as barred in certain jurisdictions based on allegations that we failed to timely enforce our IP rights."

31.     Nonetheless, since L Catteron's acquisition of a majority stake of Birkenstock, Birkenstock has now chosen to claim ownership of intellectual property rights in and to its footwear designs for the first time, and to seek to enforce these alleged rights that they had never claimed in the previous decades during which it knowingly co-existed with Counter-Plaintiffs and their products in the footwear industry.

32.     Thus, in December 2021, mere months after L Catteron's majority-stake acquisition, Birkenstock asserted claims against Counter-Plaintiffs for the first time that Birkenstock owns intellectual property rights in its footwear designs and that Counter-Plaintiffs were violating those alleged rights by selling certain footwear products – including products that Counter-Plaintiffs had been selling for decades with Birkenstock's knowledge.

33.     Based on, *inter alia*, the grounds set forth in Counter-Plaintiffs' answer and

---

[2] *See* Birkenstock Holding Limited Form F-1 Registration Statement filed with the U.S. Securities and Exchange Commission on September 12, 2023, last accessed at
https://www.sec.gov/Archives/edgar/data/1977102/000119312523233488/d541624df1.htm on September 17, 2024.

affirmative defenses *supra*, Birkenstock's allegations against Counter-Plaintiffs are legally without merit.

34.     In addition to asserting legally invalid intellectual property rights and meritless infringement allegations, Birkenstock has resorted to tortious business tactics since its acquisition by L Catteron, by intentionally utilizing its resources, leverage, and position in the footwear market to unfairly compete through improper means, including against Counter-Plaintiffs.

35.     At all relevant times, Counter-Plaintiffs have had ongoing business relationships for many years with footwear retailers, including but not limited to Designer Shoe Warehouse, Famous Footwear, Shoe Carnival, Macy's, Shoe Station, Zappos, and Rack Room Shoes (collectively, "Counter-Plaintiffs' Retailer Customers"), whereby Counter-Plaintiffs' Retailer Customers purchase footwear products from Counter-Plaintiffs at wholesale and then sell Counter-Plaintiffs' footwear products to retail end-customers.

36.     Counter-Plaintiffs have reaped substantial economic benefits through their business relationships with Counter-Plaintiffs' Retailer Customers.

37.     Upon information and belief, at all relevant times, Birkenstock has been aware of the ongoing business relationships between Counter-Plaintiffs and Counter-Plaintiffs' Retailer Customers, and that Counter-Plaintiffs have reaped substantial economic benefits through those business relationships.

38.     Upon information and belief, at all relevant times, Birkenstock has also had business relationships with Counter-Plaintiffs' Retailer Customers whereby Counter-Plaintiffs' Retailer Customers purchase footwear products from Birkenstock at wholesale and then sell Birkenstock's footwear products to retail end-customers.

39.     Upon information and belief, Counter-Plaintiffs' Retailer Customers' business relationships with Birkenstock, and their retail sales of Birkenstock's footwear products, have been profitable for Counter-Plaintiffs' Retailer Customers.

40.     Upon information and belief, Birkenstock is aware that its size, resources, and market position in the footwear industry, as well as the popularity of its high-end footwear products among luxury footwear consumers, provides it with substantial marketplace leverage in its business dealings with footwear retailers such as Counter-Plaintiffs' Retailer Customers.

41.     Upon information and belief, subsequent to L Catteron's majority-stake acquisition and before its commencement of this action, Birkenstock communicated threats to Counter-Plaintiffs' Retailer Customers that Birkenstock would cease doing business with or substantially reduce its business with Counter-Plaintiffs' Retailer Customers unless they stopped purchasing Counter-Plaintiffs' footwear products from Counter-Plaintiffs to sell at retail in their brick-and-mortar stores and/or on their e-commerce websites.

42.     Upon information and belief, Birkenstock communicated these threats with the intent and for the purpose of interfering with Counter-Plaintiffs' business and business relationships with Counter-Plaintiffs' Retailer Customers, namely, to coerce Counter-Plaintiffs' Retailer Customers to stop purchasing products from Counter-Plaintiffs.

43.     Upon information and belief, Counter-Plaintiffs' Retailer Customers stopped and/or sharply reduced their wholesale purchase orders of footwear products from Counter-Plaintiffs following receipt of the coercive threats communicated by Birkenstock.

44.     Upon information and belief, Counter-Plaintiffs' Retailer Customers stopped and/or sharply reduced their wholesale purchase orders of footwear products from Counter-Plaintiff as a direct result of the coercive threats communicated by Birkenstock.

45.     Upon information and belief, Counter-Plaintiffs' Retailer Customers' stopping and/or sharply reducing of their wholesale purchase orders of footwear products from Counter-Plaintiffs due to the coercive threats communicated to them by Birkenstock has resulted in a substantial loss of sales and profits by Counter-Plaintiffs, which Counter-Plaintiffs would have achieved but for Birkenstock's improper coercion.

46.     By intentionally utilizing its marketplace leverage to threaten to stop doing business with or substantially reduce its business with Counter-Plaintiffs' Retailer Customers unless they stopped purchasing Counter-Plaintiffs' footwear products from Counter-Plaintiffs to sell at retail in their brick-and-mortar stores and/or on their e-commerce websites, for the purpose of coercing Counter-Plaintiffs' Retailer Customers to stop purchasing Counter-Plaintiffs' footwear products from Counter-Plaintiffs, Birkenstock interfered with Counter-Plaintiffs' business relationships with Counter-Plaintiffs' Retailer Customers through improper means and with improper motive.

47.     As a direct result of Birkenstock's tortious interference with Counter-Plaintiffs' business and business relationships with Counter-Plaintiffs' Retailer Customers, Counter-Plaintiffs have been substantially harmed, including but not limited to losses of product sales and resulting profits that Counter-Plaintiffs would have achieved but for Birkenstock's tortious interference, in an amount to be proven at trial.

## COUNT II
## UNFAIR COMPETITION
### *(Massachusetts common law)*

48.     Counter-Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of their Counterclaims as if fully set forth herein.

49.     Birkenstock's improper and illicit conduct alleged in these Counterclaims

constitutes actionable unfair competition in violations of the common law of the Commonwealth of Massachusetts.

50.     Birkenstock committed its improper and illicit conduct alleged in these Counterclaims intentionally and purposely.

51.     As a result of Birkenstock's improper and illicit conduct alleged in these Counterclaims, Counter-Plaintiffs have been substantially harmed, in an amount to be proven at trial.

**COUNT III**
**MASSACHUSETTS UNFAIR METHODS OF COMPETITION**
**OR DECEPTIVE ACTS OR PRACTICES**
*(Massachusetts Gen. L. ch. 93A)*

52.     Counter-Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of their Counterclaims as if fully set forth herein.

53.     Birkenstock's improper and illicit conduct alleged in these Counterclaims constitutes actionable unfair methods of competition or deceptive acts or practices in violation of Mass. Gen. L. ch. 93A §§ 2, 11.

54.     Birkenstock committed its improper and illicit conduct alleged in these Counterclaims intentionally and purposely.

55.     As a result of Birkenstock's improper and illicit conduct alleged in these Counterclaims, Counter-Plaintiffs have been substantially harmed, in an amount to be proven at trial.

**COUNT IV**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**
*(D257 Patent)*

56.     Counter-Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of their Counterclaims as if fully set forth herein.

57.     Birkenstock has accused Counter-Plaintiffs of infringing the D257 Patent.

58.     As a result of the acts described in the foregoing Paragraphs and/or Birkenstock's allegations of infringement of the D257 Patent by Counter-Plaintiffs and/or filing of its SAC against Counter-Plaintiffs, there exists an actual and justiciable controversy between Counter-Plaintiffs and Birkenstock regarding the alleged infringement of D257 Patent.

59.     Counter-Plaintiffs have not infringed and do not infringe directly, indirectly, or in any other manner, any valid and enforceable claim of the D257 Patent, either literally or under the doctrine of equivalents.

60.     A judicial declaration of non-infringement is necessary and appropriate to resolve this controversy and prevent Birkenstock from continuing to allege infringement of the D257 Patent by Counter-Plaintiffs.

61.     This is an exceptional case under 35 U.S.C. § 285 including, without limitation, because Birkenstock filed its SAC with knowledge of the facts stated in these Counterclaims.

## COUNT V
## DECLARATORY JUDGMENT OF INVALIDITY
### (D257 *Patent*)

62.     Counter-Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of their Counterclaims as if fully set forth herein.

63.     As a result of the acts described in the foregoing Paragraphs and/or Birkenstock's allegations of infringement of the D257 Patent by Counter-Plaintiffs and/or filing of its SAC against Counter-Plaintiffs, there exists an actual and justiciable controversy between Counter-Plaintiffs and Birkenstock regarding the validity of the D257 Patent.

64.     Claim 1 of the D257 Patent is invalid for anticipation under 35 U.S.C. § 102 in view of the following non-limiting prior art references:

- EU RCD No. 000664560-0022;

- KR30-2011-0025096;

- DE402012001224.6;

- FR20106478-004;

- EU RCD No. 000606058-0026;

- International Reg. No. DM/014180;

- DE402015202093-0001;

- EU RCD No. 000882675-0004;

- FR055459;

- FR942875-030;

- EU RCD No. 000606058-0023;

- Alegria Clog; and

- LL Bean Wicked Good Slippers.

65.    Claim 1 of the D257 Patent is invalid for obviousness under 35 U.S.C. § 103 in view of a single prior art reference alone, or combined with the one or more additional prior art references.  The following are non-limiting examples of prior art references:

- EU RCD No. 000664560-0022;

- KR30-2011-0025096;

- DE402012001224.6;

- FR20106478-004;

- EU RCD No. 000606058-0026;

- International Reg. No. DM/014180;

- DE402015202093-0001;

- EU RCD No. 000882675-0004;

- FR055459;

- FR942875-030;

- EU RCD No. 000606058-0023;

- Alegria Clog; and

- LL Bean Wicked Good Slippers.

66.    A judicial declaration of invalidity is necessary and appropriate to resolve this controversy and prevent Birkenstock from continuing to allege validity of the D257 Patent.

67.    This is an exceptional case under 35 U.S.C. § 285 including, without limitation, because Birkenstock filed its SAC with knowledge of the facts stated in this Counterclaim.

**COUNT VI**
**CANCELLATION OF U.S. TRADEMARK REGISTRATION**
(***U.S. Trademark Reg. No. 2,600,060***)

68.    Counter-Plaintiffs reallege and incorporate by reference the allegations contained in all prior paragraphs of their Counterclaims as if fully set forth herein.

69.    The Lanham Act, 15 U.S.C. § 1119, empowers this Court to order the cancellation of U.S. trademark registrations owned by parties to this action.

70.    In this action, Birkenstock has alleged that Counter-Plaintiffs have infringed its alleged rights in and to a trademark registered under U.S. Trademark Registration No. 2,600,060 (the "'060 Registration").

71.    The drawing for the mark covered by the '060 Registration (the "'060 Mark"), as submitted to the U.S. Patent and Trademark Office (the "PTO") by Birkenstock on March 25, 2002 in connection with its U.S. Trademark Application Serial No. 75923764 (the "'764 Application") underlying the '060 Registration is reproduced below:



72.     As set forth below, the '060 Registration is subject to cancellation on at least the following alternative grounds: (i) that the '060 Registration was procured by fraud upon the PTO by Birkenstock misrepresenting the nature of the mark in its trademark application; and (ii) that the '060 Mark is functional.

     **i.     Birkenstock Procured the '060 Registration By Fraud Upon the PTO By Misrepresenting the Nature of the '060 Mark**

73.     The '764 Application, filed on February 17, 2000 by Birkenstock, identified the '060 Mark as "BIRK and Design" and identified the goods with which the '060 Mark is used as "footwear, namely: shoes, boots, sandals, clogs, slippers, mules; parts for the repair of footwear, namely, outer soles."

74.     In the '764 Application, Birkenstock identified the '060 Mark as a two-dimensional design mark, and did not identify the '060 Mark as a three-dimensional configuration or product design.

75.     Upon information and belief, when it filed the '764 Application, Birkenstock had never used the '060 Mark as a two-dimensional design mark, and had only used the '060 Mark as a three-dimensional product design configuration, in connection with the goods claimed in the '764 Application.

76.     Upon information and belief, when it filed the '764 Application, Birkenstock misrepresented the nature of the '060 Mark by applying to register it as a two-dimensional design mark rather than a three-dimensional product design configuration, despite that it had only used the '060 Mark as a three-dimensional product design configuration and not as a two-dimensional design mark in connection with the goods identified in the '764 Application.

77.     Birkenstock's misrepresentation of the '060 Mark as a two-dimensional design mark rather than a three-dimensional product design configuration in the '764 Application was a material misrepresentation.  Accurate identification of the '060 Mark as a three-dimensional product design configuration would have caused the PTO to review and analyze the '060 Mark as a three-dimensional product design configuration, including on the issues of, *inter alia*, functionality and whether Birkenstock had made substantially exclusive use of the three-dimensional product design configuration in United States commerce, each of which may have resulted in refusal of registration.

78.     Upon information and belief, Birkenstock misrepresented the nature of the '060 Mark as a two-dimensional design mark knowingly and with the intention of misleading the PTO into reviewing and analyzing the applied-for '060 Mark as a two-dimensional design mark rather than as a three-dimensional product design configuration, and thereby avoid potential refusals of registration on grounds of, *inter alia*, functionality and/or lack of substantially exclusive use.

79.     Accordingly, Birkenstock procured the '060 Registration by fraud upon the PTO, justifying cancellation of the '060 Registration pursuant to 15 U.S.C. §§ 1064(3) and 1119.

**ii.     The '060 Mark Is Functional**

80.     As a separate and alternative ground, the '060 Registration is subject to cancellation pursuant to the doctrine of functionality.

81.    Functional trademarks and trade dresses are not entitled to protection under the Lanham Act, and a registration of a functional trademark or trade dress is subject to cancellation at any time.

82.    A trademark or trade dress is functional if it is essential to the use or purpose of, or affects the cost or quality of, a product with which it is used.

83.    Evidence that is relevant to whether a mark is functional includes, *inter alia*, "advertising that touts the utilitarian advantages of the design" (*see In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1374-75 (Fed. Cir. 2012); *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41 (C.C.P.A. 1982)).

84.    Birkenstock's '060 Registration claims a date of first use in United States commerce of 1982.

85.    Upon information and belief, since 1982, Birkenstock has continuously and repeatedly touted the utilitarian advantages of the '060 Mark in its United States advertising and marketing materials.

86.    Below are just two of many examples of Birkenstock touting the functional benefits of the '060 Mark in advertising and marketing materials for goods using the '060 Mark produced by Birkenstock in this action[3]:

---

[3] Images shown below are reproduced from documents produced by Birkenstock in this action as BIRKENSTOCK_5863 and BIRKENSTOCK_5875.

## The Sole.



Birkenstock soles, made of EVA, are soft, lightweight, and flexible. Since the sole provides our connection with the ground, these features are all very important. Birkenstock soles cushion the impact of hard surfaces, yet they allow full, natural movement of the feet. A unique tread contributes to durability and helps to provide traction.



**Pre-Cut Standard Soles**

Soles are cut from Birkenstock's standard EVA material, which is soft, flexible, and lightweight. The "Birk" tread contributes to both the durability and the slip-resistance of the soles.

(Note: For best results, apply cement to both the footbed and the sole. Allow both pieces to dry for 30-45 minutes before pressing together.)

87.     As Birkenstock's advertising and marketing materials tout, the '060 Mark, a tread pattern used on the outsole of footwear products, provides utilitarian benefits such as durability, slip-resistance, and traction to users of footwear products on which it is used.

88.     Thus, the '060 Mark is essential to the use or purpose of, and affects the quality of, the footwear products with which it is used.

89.     Accordingly, the '060 Mark is functional, justifying cancellation of the '060

Registration pursuant to 15 U.S.C. §§ 1064(3) and 1119.

**COUNT VII**
**CANCELLATION OF U.S. TRADEMARK REGISTRATION**
(***U.S. Trademark Reg. No. 7,593,347***)

90.     Counter-Plaintiffs reallege and incorporate by reference the allegations contained

in all prior paragraphs of their Counterclaims as if fully set forth herein.

91.     In this action, Birkenstock has alleged that Counter-Plaintiffs have infringed its

alleged rights in and to a mark registered under U.S. Trademark Registration No. 7,593,347 (the

"'347 Registration").

92.     The drawing for the mark covered by the '347 Registration (the "'347 Mark"), as

submitted to the PTO by Birkenstock on March 25, 2002 in connection with its U.S. Trademark

Application Serial No. 97792396 (the "'396 Application") underlying the '347 Registration, is

reproduced below:



93.     As set forth below, the '347 Registration is subject to cancellation on any of at

least the following alternative grounds: (i) that the '347 Registration was procured by fraud upon

the PTO by Birkenstock misrepresenting the nature of the mark in its trademark application; (ii) that the '347 Registration was procured by fraud upon the PTO by Birkenstock misrepresenting its use in United State commerce of the applied-for mark in its trademark application; (iii) that Birkenstock is not engaged in actual use in United States commerce of the '347 Mark; (iv) that the '347 Mark is functional; and (v) that the '347 Mark is generic.

### i.    Birkenstock Procured the '347 Registration By Fraud Upon the PTO By Misrepresenting the Nature of the '347 Mark

94.    In the '396 Application, filed on February 13, 2023, Birkenstock described the '347 Mark as follows: "The mark consists of a repeating pattern of curved lines defining interlocking bone-shaped features disposed over the surface of a footwear sole, wherein said sole is incorporated into other footwear articles," and identified the goods with which the '347 Mark is used as: "footwear, namely: shoes, boots, sandals, clogs, slippers, mules; parts for the repair of footwear, namely, outer soles."

95.    By describing the '347 Mark as a "repeating pattern of curved lines" in the '396 Application, Birkenstock described its applied-for mark as a two-dimensional pattern.

96.    Birkenstock did not identify the '347 Mark as a three-dimensional configuration or product design in the '396 Application.

97.    Upon information and belief, and as evidenced by, *inter alia*, the numerous third-party registrations for footwear sole patterns that Birkenstock submitted to the PTO in a response to a PTO Office Action in connection with the prosecution of the '396 Application that <u>all</u> identify their registered marks as three-dimensional in nature and/or as footwear product configurations,[4] Birkenstock was aware at all relevant times that an application to the PTO to

---

[4] *See* https://tsdr.uspto.gov/documentviewer?caseId=sn97792396&docId=APP20230216102035&linkId=20#docIndex=9 &page=1, accessed March 26, 2025.

register a three-dimensional footwear sole design properly discloses the design as a three-dimensional product configuration in order to provide proper notice to the PTO of its nature.

98.    Upon information and belief, when it filed the '396 Application, Birkenstock had never used and was not using the '347 Mark as depicted in the '396 Application's drawing as a two-dimensional design mark in connection with the goods claimed in the '396 Application.

99.    Upon information and belief, by identifying the applied-for mark as a "pattern" and not as a three-dimensional configuration or product design in the '396 Application, Birkenstock misrepresented the nature of the '347 Mark as a two-dimensional design mark rather than a three-dimensional product design configuration, despite that it had not used the '347 Mark as a two-dimensional design mark and had only used the '347 Mark as a three-dimensional product design configuration in connection with the goods identified in the '396 Application.

100.    Birkenstock's misrepresentation of the '347 Mark as a two-dimensional "pattern" rather than a three-dimensional product design configuration in the '396 Application was a material misrepresentation.  Identification of the '347 Mark as a three-dimensional product design configuration would have caused the PTO to review and analyze the '347 Mark as a three-dimensional product design configuration, including on the issues of, *inter alia*, functionality, whether Birkenstock had made substantially exclusive use of the three-dimensional product design configuration in United States commerce, and whether Birkenstock in fact was engaged in use thereof in United States commerce, each of which may have resulted in refusal of registration.

101.    Upon information and belief, Birkenstock misrepresented the nature of the '347 Mark as a two-dimensional "pattern" in the '396 Application knowingly and with the intention of misleading the PTO into reviewing and analyzing the '347 Mark as a two-dimensional design

mark rather than as a three-dimensional product design configuration, and thereby avoid potential refusals of registration on grounds of, *inter alia*, functionality, lack of substantially exclusive use, and/or non-use.

102.    Accordingly, Birkenstock procured the '347 Registration by fraud upon the PTO, justifying cancellation of the '347 Registration pursuant to 15 U.S.C. §§ 1064(3) and 1119.

**ii.    Birkenstock Procured the '347 Registration By Fraud Upon the PTO By Misrepresenting Use In United States Commerce of the '347 Mark**

103.    As a separate and alternative ground, Birkenstock procured the '347 Registration by fraud upon the PTO by misrepresenting that it was engaged in actual use of '347 Mark in United States commerce in the '396 Application.

104.    Birkenstock's '396 Application was filed on the basis of a claim of actual use in United States commerce of the '347 Mark pursuant to Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a).

105.    As described at Paragraphs 113-117 *infra*, Birkenstock has admitted in this action that it is not presently engaged in actual use in United States commerce of the '347 Mark.

106.    Upon information and belief, when Birkenstock filed the '396 Application, it was not engaged in actual use in United States commerce of the '347 Mark.

107.    Upon information and belief, Birkenstock's claim of actual use in United States commerce of the '347 Mark in the '396 Application was false.

108.    Upon information and belief, when Birkenstock filed the '396 Application, it knowingly misrepresented that it was engaged in actual use in United States commerce of the '347 Mark, when in fact it was not.

109.    Birkenstock's misrepresentation of use in United States commerce of the '347 Mark in the '396 Application was a material misrepresentation.  Had Birkenstock accurately

stated that it was in fact not engaged in actual use in United States commerce of the '347 Mark, the PTO would not have granted the '347 Registration on the basis of use in United States commerce pursuant to Section 1(a) of the Lanham Act, and would instead have refused registration on that basis.

110.    Upon information and belief, Birkenstock misrepresented that it was engaged in actual use in United States commerce of the '347 Mark in the '396 Application, when in fact it was not engaged in such use when it filed the '396 Application, knowingly and with the intention of misleading the PTO into issuing the '347 Registration on the basis of its claim of use in commerce pursuant to Section 1(a) of the Lanham Act.

111.    Accordingly, Birkenstock procured the '347 Registration by fraud upon the PTO, justifying cancellation of the '347 Registration pursuant to 15 U.S.C. §§ 1064(3) and 1119.

### iii.    Birkenstock Is Not Presently Engaged in Use In United States Commerce of the Mark Registered Under the '347 Registration

112.    As a separate and alternative ground, the '347 Registration is subject to cancellation on grounds of non-use to 15 U.S.C. § 1064(6).

113.    As shown *infra*, the '347 Mark consists of a "repeating pattern of curved lines" in the shape of the sole of a footwear product, without any literal element.

114.    Birkenstock's SAC describes the mark registered under the '347 Registration as a "bone-pattern sole design *without the literal element 'BIRK'*" (*see* SAC ¶¶ 33-34 [emphasis added]).

115.    During discovery in this action, Birkenstock has admitted that "all of its footwear products currently sold in the United States using the Bone-Pattern Mark include the literal element 'BIRK' on their sole".[5]

---

[5] *See* Birkenstock's Response to Defendants' Request for Admission No. 6 dated February 3, 2025.

116.    Thus, Birkenstock has admitted that it does not currently sell any footwear products in the United States using the bone-pattern sole design without the literal element "BIRK" – that is, using the '347 Mark.

117.    Thus, upon information and belief and based on Birkenstock's admission, Birkenstock is not presently engaged in use in United States commerce of the '347 Mark in connection with the goods identified in the '347 Registration that would support trademark registration.

118.    Accordingly, the '347 Registration is subject to cancellation on grounds of non-use pursuant to 15 U.S.C. § 1064(6).

**iv.    The '347 Mark Is Functional**

119.    As a separate and alternative ground, the '347 Registration is subject to cancellation on grounds of functionality pursuant to 15 U.S.C. § 1064(3).

120.    The '347 Registration claims a date of first use of the '347 Mark in United States commerce of 1980.

121.    Upon information and belief, since 1980, Birkenstock has continuously and repeatedly touted the utilitarian advantages of the '347 Mark as used with goods identified in the '347 Registration (*see* ¶¶ 85-87 *supra*).

122.    As Birkenstock's advertising and marketing materials tout, the '347 Mark, a tread pattern used on the outsole of footwear products, provides utilitarian benefits such as durability, slip-resistance, and traction to users of footwear products on which it is used.

123.    Thus, the '347 Mark is essential to the use or purpose of, and affects the quality of, the footwear products with which it is used.

124.    Accordingly, the '347 Mark is functional, justifying cancellation of the '347

Registration pursuant to 15 U.S.C. §§ 1064(3) and 1119.

### v.    The '347 Mark Is Generic, Including By Virtue of Birkenstock's Abandonment

125.     As a separate and alternative ground for cancellation of the '347 Registration, the '347 Registration is subject to cancellation on grounds of genericism and/or abandonment pursuant to 15 U.S.C. § 1064(3).

126.    Generic trademarks and trade dresses are not entitled to trademark or trade dress protection under the Lanham Act, and a registration for a generic trademark or trade dress is subject to cancellation at any time.

127.    A trade dress that consists of the design of a product that conforms to a well-established industry custom or is a common or basic form of a particular item, as may be shown by extensive third-party use of the product design, is generic and hence unprotectable.

128.    Common usage may render a product design trade dress that was once distinctive generic if, by virtue of the use, the design can no longer be understood to represent a product's source.

129.    Pursuant to 15 U.S.C. § 1064(3), "the primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used."

130.    The Lanham Act, 15 U.S.C. § 1127, provides that "[a] mark shall be deemed to be 'abandoned' … [w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.  Purchaser motivation shall not be a test for determining abandonment under this paragraph."

131.    Thus, a trademark or trade dress may become generic and not entitled to protection via abandonment as a result of the owner's failure to police its claimed trademark or trade dress rights, so that widespread usage by competitors leads to generic usage among the relevant public, who see many sellers using the same design.

132.    Upon information and belief, the pattern depicted in the '347 Mark has been widely used in the footwear industry as a footwear sole tread design for many years before Birkenstock filed the '396 Application to register the '347 Mark in 2023.

133.    Upon information and belief, between Birkenstock's claimed date of first use in United States commerce of the '347 Mark of 1980 and the 2023 filing of the '396 Application, Birkenstock failed to adequately police and enforce its claimed rights in and to the '347 Mark against third-party use thereof.

134.    As a result of Birkenstock's course of conduct of failing to adequately police and enforce its claimed rights in the '347 Mark and tolerating third-party use for over forty years between its claimed date of first use in United States commerce of 1980 and the 2023 filing of the '396 Application, the pattern depicted in the '347 Mark has been widely used as a common footwear sole design in the footwear industry.

135.    Upon information and belief, the pattern depicted in the '347 Mark remains a common footwear sole design widely used in the footwear industry today.

136.    As a result, the '347 Mark is incapable of serving a source-identifying function.

137.    The primary significance of the '347 Mark as used on footwear is not as an indicator of source, but rather, as a popular, common, and widely used style for footwear sole tread designs.

138.    Accordingly, the '347 Mark is generic and generic *ab initio*, justifying

cancellation of the '060 Registration pursuant to 15 U.S.C. §§ 1064(3) and 1119.

139.    Moreover, Birkenstock's course of conduct of failing to adequately police and enforce its claimed rights in the '347 Mark and tolerating third-party use for over forty years between its claimed date of first use in United States commerce of 1980 and the 2023 filing of the '396 Application, resulting in widespread use of the pattern depicted in the '347 Mark as a common footwear sole design in the footwear industry, constitutes abandonment, further justifying cancellation of the '060 Registration pursuant to 15 U.S.C. §§ 1064(3) and 1119..

## JURY TRIAL DEMAND

Counter-Plaintiffs respectfully demand a trial by jury of all claims and issues on their Counterclaims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/Counter-Plaintiffs pray for judgment on Birkenstock's SAC and their Counterclaims as follows:

1.    That Birkenstock's SAC, and each of the causes of action alleged therein, be denied in their entirety and dismissed with prejudice;

2.    That judgment be entered in Defendants/Counter-Plaintiffs' favor and against Birkenstock on each of the causes of action alleged in Birkenstock's SAC and Counter-Plaintiffs' Counterclaims;

3.    That Defendants/Counter-Plaintiffs be awarded compensatory damages on their Counterclaims in an amount to be proven at trial, enhanced to the fullest extent permitted by law;

4.    That Defendants/Counter-Plaintiffs be awarded punitive damages on their Counterclaims to the fullest extent permitted by law;

5.      That judgment be entered declaring that Defendants/Counter-Plaintiffs have not infringed and do not infringe any valid claim of the D257 Patent;

6.      That judgment be entered declaring that the D257 Patent is invalid;

7.      That the Commissioner of Trademarks of the United States Patent and Trademark Office be ordered to cancel U.S. Trademark Registration Nos. 2,600,060 and 7,593,347;

8.      That Defendants/Counter-Plaintiffs be awarded all costs and attorney's fees incurred in connection with the defense of the SAC and the prosecution of the Counterclaims to the maximum extent permitted by law; and

9.      That Defendants/Counter-Plaintiffs be awarded such other and further relief as the Court may deem just and proper.


Date:   April 9, 2025

                                        Respectfully submitted,

                                        MEISTER SEELIG & FEIN PLLC


                                        __/s/ Edmund J. Ferdinand, III_____
                                        Edmund J. Ferdinand, III (*pro hac vice*)
                                        Alexander Malbin (*pro hac vice*)
                                        Robert Feinland (*pro hac vice*)
                                        MEISTER SEELIG & FEIN PLLC
                                        125 Park Avenue, 7th Floor
                                        New York, NY 10017
                                        (t) (212) 655-3500
                                        (f) (212) 655-3540

                                        Thomas P. McNulty (BBO #654,564)
                                        LANDO & ANASTASI, LLP
                                        60 State Street, 23rd Floor
                                        Boston, MA 02109
                                        (t) (617) 395-7000
                                        (f) (617) 395-7070

                                        *Counsel for Defendants/Counter-Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2025, a true and correct copy of the foregoing Defendants'

Answer & Affirmative Defenses to Second Amended Complaint and Amended Counterclaims

was served via CM/ECF on all counsel of record.

　　　　　　　　　　　　　　___/s/ Thomas P. McNulty _____
　　　　　　　　　　　　　　　　Thomas P. McNulty