```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                   )
BIRKENSTOCK US BIDCO, INC.,        )
BIRKENSTOCK USA, LP, and           )
BIRKENSTOCK IP GMBH,               )
                                   )
              Plaintiffs,          )
                                   )      Civil Action
v.                                 )      No. 24-cv-10610-PBS
                                   )
WHITE MOUNTAIN INTERNATIONAL LLC   )
and AMERICAN EXCHANGE TIME LLC,    )
                                   )
              Defendants.          )
_____)
```

### MEMORANDUM AND ORDER

October 17, 2025

Saris, J.

### INTRODUCTION

Plaintiffs Birkenstock US BidCo, Inc., Birkenstock USA, LP, and Birkenstock IP GmbH (collectively, "Birkenstock") and Defendants White Mountain International LLC and American Exchange Time LLC (collectively, "White Mountain") have proposed competing constructions of the sole claim in U.S. Design Patent No. D919,257 (the "D257 patent"). After a Markman hearing, the Court now adopts the following construction: "The ornamental design for a clog, as shown in Figures 1-7."

### BACKGROUND

Birkenstock brought this lawsuit against White Mountain in March 2024. On September 4, 2024, the Court denied White Mountain's

1

motion to dismiss except as to one state-law claim. See Birkenstock US BidCo, Inc. v. White Mountain Int'l LLC, 747 F. Supp. 3d 292, 303 (D. Mass. 2024). In its operative second amended complaint, Birkenstock alleges that White Mountain has committed design patent infringement and other federal and state-law violations by producing and marketing several sandals and clogs that Birkenstock alleges infringe its intellectual property.

As relevant here, Birkenstock alleges that White Mountain has infringed the D257 patent. That design patent claims "[t]he ornamental design for a clog, as shown and described." D257 patent, at [57]. The claim refers to seven photographs labeled as Figures 1-7:



The parties now dispute the proper construction of the D257 patent's claim, proposing the following competing constructions:

| Birkenstock's Construction | White Mountain's Construction |
|---|---|
| "The ornamental design for a clog as shown in Figures 1-7." | "The ornamental design for a clog, as shown and described in Figures 1-7, recognizing that the following elements are functional and that the overall scope of the claim is narrowly limited to the ornamental aspects of the design:<br><br>• A double loop that secures a strap extending the width of a clog;<br><br>• A back lip that secures a person's foot to a clog; and<br><br>• A buckle that fastens a strap and allows for adjusting the tightness of the fit of a clog." |

Dkt. 49 at 2.

The parties filed briefs in support of their proposed constructions. Birkenstock's brief is accompanied by an expert declaration from Bertrand Guillaume, who previously worked in the footwear industry for twenty-five years, including in merchandising and product development roles. The Court held a Markman hearing on May 5, 2025.

3

**LEGAL FRAMEWORK**

Upon meeting statutory requirements, an inventor may secure a design patent protecting "any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a) (emphasis added). Because "[w]ords cannot easily describe ornamental designs," Sport Dimension, Inc. v. Coleman Co., 820 F.3d 1316, 1320 (Fed. Cir. 2016), the Federal Circuit has instructed that "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design," Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc); see id. ("[A] design is better represented by an illustration 'than it could be by any description . . . .'" (quoting Dobson v. Dornan, 118 U.S. 10, 14 (1886))). Courts therefore regularly construe design patent claims solely by reference to figures. See, e.g., Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (rejecting detailed verbal construction for footwear design patent and instead directing application of infringement analysis to claim for "the design shown in Figures 1-7"); Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed. Cir. 2002) (affirming construction reading "a tray of a certain design, as shown in Figures 4-5, containing shrimp arranged in a particular fashion, as shown in Figures 1-3"), abrogated on other grounds by, Egyptian Goddess, 543 F.3d 665;

4

Reddy v. Lowe's Cos., 60 F. Supp. 3d 249, 260 (D. Mass. 2014) (adopting construction reading "[t]he ornamental design for a bathroom vanity light shade, as shown and described in Figures 1-5"). Those constructions parallel the ones typically provided by putative patentees. See 37 C.F.R. § 1.153(a) ("No description, other than a reference to the drawing, is ordinarily required."); Manual of Patent Examining Procedure § 1503.01 (9th ed. 2024) ("No description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration . . . is its own best description.").

Although the Federal Circuit has advised against "detailed verbal claim constructions," it has noted that courts "may use claim construction to help guide the fact finder through issues that bear on claim scope." Sport Dimension, 820 F.3d at 1320. As relevant here, a court can "help[] the fact finder 'distinguish[] between those features of the claimed design that are ornamental and those that are purely functional.'" Id. (second alteration in original) (quoting Egyptian Goddess, 543 F.3d at 680; see OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). Courts analyze the following five factors, sometimes referred to as the PHG factors or Berry Sterling factors, in

5

determining whether elements of a claimed design serve a primarily functional purpose:

> whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function.

PHG Techs., LLC v. St. John Cos., 469 F.3d 1361, 1366 (Fed. Cir. 2006) (emphasis omitted) (quoting Berry Sterling Corp. v. Pescor Plastics, Inc., 122 F.3d 1452, 1456 (Fed. Cir. 1997)); see Sport Dimension, 820 F.3d at 1322 (noting that although these factors were "introduced . . . to assist courts in determining whether a claimed design was dictated by function and thus invalid, they may serve as a useful guide for claim construction functionality as well"). In particular, "an inquiry into whether a claimed design is primarily functional should begin with an inquiry into the existence of alternative designs." Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1330 (Fed. Cir. 2015). Where that inquiry "is not dispositive," courts analyze the remaining PHG factors. Id.

When a court concludes that certain elements of a claimed design have functional purposes, that finding "d[oes] not mean . . . that the design claim ha[s] no scope. Rather, the claim [is] limited to the ornamental aspects of the[] functional elements." Id. at 1333; see id. at 1334 (noting that even where

6

certain design elements were "dictated by function," the design patent nevertheless "ha[d] some scope" consisting of "the particular ornamental designs of those underlying elements"). A court therefore must not "eliminate[] whole aspects of the claimed design," but rather should instruct the fact finder to "focus on what the[] [functional] elements contribute to the design's overall ornamentation." Sport Dimension, 820 F.3d at 1321, 1323.

## DISCUSSION

### I. Expert Declaration

#### A. White Mountain's Request to Exclude

White Mountain seeks exclusion of Guillaume's expert declaration on two bases: first, that Guillaume improperly opines on questions of law; and second, that Guillaume fails to consider the PHG factors other than the presence of alternative designs. The Court disagrees that exclusion of the declaration is warranted.

It is true that "expert testimony on . . . purely legal issues is rarely admissible." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99 (1st Cir. 1997); see id. at 100 ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact . . . ." (quoting Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1212 (D.C. Cir. 1997))). To the extent that Guillaume's opinions -- for example, his statement that "none of the features of the Claimed Design are dictated solely by their function," Dkt. 54-2 ¶ 18 -- amount to legal conclusions, the Court

7

does not rely on them. See, e.g., Chapman ex rel. Est. of Chapman v. Bernard's Inc., 167 F. Supp. 2d 406, 421 (D. Mass. 2001) (striking three paragraphs containing legal conclusions but otherwise denying motion to exclude expert report). But the bulk of Guillaume's declaration consists of his identifying alternative designs that he opines perform the same functions as the design features challenged by White Mountain. The Federal Circuit has approved the importance of a patentee's presenting "evidence of . . . alternative designs" during the claim construction phase of a design patent dispute. Ethicon, 796 F.3d at 1330. The alternative designs presented in Guillaume's declaration, which Guillaume identifies based on his multiple decades of experience in the footwear industry, assist the Court in "determin[ing] a fact in issue" and are properly before the Court, at least for purposes of claim construction. Fed. R. Evid. 702(a).

The Court likewise rejects White Mountain's argument that Guillaume "failed to mention or even address" the PHG factors other than alternative designs. Dkt. 60 at 15. This contention mischaracterizes Guillaume's declaration, which in fact lists each of the five PHG factors and notes their relevance to the functionality analysis. The fact that Guillaume focuses primarily on alternative designs is a proper exercise of his expertise and reflects the Federal Circuit's direction that "while the [PHG] factors can provide useful guidance, an inquiry into whether a

8

claimed design is primarily functional should begin with an inquiry into the existence of alternative designs." Ethicon, 796 F.3d at 1330. In any event, Guillaume's focus on alternative designs does not prevent the Court from considering the other factors, and, as explained above, the Court accords no deference to Guillaume's ultimate conclusions regarding the proper claim construction.

    **B.**    **Expert Evidence in Design Patent Claim Construction**

At the risk of clogging its opinion, the Court briefly addresses the role played by experts in design patent claim construction. An expert declaration constitutes extrinsic evidence, which is "less significant than the intrinsic record" in resolving claim disputes for other kinds of patents. Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc) (quoting C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004)). Nevertheless, in design patent claim disputes, the Court may consider expert testimony "in the context of the intrinsic evidence" where, as here, it is not "at odds with the claim construction mandated by" the intrinsic record. Id. at 1318-19 (quoting Key Pharms. v. Hercon Lab'ys Corp., 161 F.3d 709, 716 (Fed. Cir. 1998)). And consideration of expert evidence is appropriate in light of the PHG factors' mandating consideration of extrinsic evidence such as "alternative designs" and "advertising." PHG Techs., 469 F.3d at 1366 (emphasis omitted)

9

(quoting Berry Sterling, 122 F.3d at 1456); see also Ethicon, 796 F.3d at 1330, 1334.

Because it involves a factual inquiry, often including expert evidence, the exercise of defining functional versus ornamental elements for purposes of claim construction is often undertaken at summary judgment and is sometimes deferred to that stage. See, e.g., Depaoli v. Daisy Mfg. Co., No. 07-cv-11778, 2009 WL 2145721, at *9-10, *9 n.6 (D. Mass. July 14, 2009). But courts also may perform this analysis before summary judgment. See, e.g., Lu v. Hyper Bicycles, Inc., 568 F. Supp. 3d 68, 72-73 (D. Mass. 2021). Here, because the parties have specifically requested that the Court resolve the issue before the close of discovery, the Court adopts Birkenstock's proposed construction but leaves open the possibility of returning to questions of functionality if the final factual record warrants doing so.

## II. Claim Construction

White Mountain identifies three features of the claimed design that it contends are functional: (1) "[a] double loop that secures a strap extending the width of a clog," (2) "[a] back lip that secures a person's foot to a clog," and (3) "[a] buckle that fastens a strap and allows for adjusting the tightness of the fit

10

of a clog." Dkt. 49 at 2. These three features are identified in the following images provided by White Mountain:



Birkenstock does not dispute that these features perform the functions identified by White Mountain. Indeed, at the Markman hearing, Birkenstock's counsel acknowledged that almost every part of a shoe typically serves some practical purpose. But Birkenstock correctly notes that that does not necessarily mean that every design element of a shoe is primarily functional for purposes of claim construction. See, e.g., L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed. Cir. 1993) (holding that the fact that certain elements of an athletic shoe "provide support for the foot does not mean that the specific design of each element, and the combination of these elements into the patented design, is dictated by primarily functional considerations"); High Point Design LLC v. Buyers Direct, Inc., 730 F.3d 1301, 1316 (Fed. Cir. 2013) (rejecting district court's approach of analyzing whether each feature of a slipper "can perform functions" and holding that

11

the proper inquiry is into "the functionality of the particular design" of those features (emphasis added) (quoting Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1563 (Fed. Cir. 1988))); cf. L.A. Gear, 988 F.2d at 1123 ("[T]he primacy of appearance in the design of shoes can not be ignored when analyzing functionality.").

Rather, the Court must determine whether the designs of the features identified by White Mountain -- as opposed to the actual features themselves -- are dictated by function under the PHG factors. See, e.g., Ethicon, 796 F.3d at 1334 (holding that even where there is "functionality inherent in the underlying articles themselves," a design patent can still claim protection of the "ornamental designs adorning those underlying articles" unless those designs "are essential to the use of the article[s]"); Hupp v. Siroflex of Am., Inc., 122 F.3d 1456, 1460 (Fed. Cir. 1997) ("The function of the article itself must not be confused with 'functionality' of the design of the article."). Of course, to the extent the articles bearing the challenged design features serve functional purposes, those functional purposes are not part of the scope of the D257 patent, which rightly claims only "[t]he ornamental design for a clog, as shown and described." D257 patent, at [57] (emphasis added). Because a design patent protects only the "ornamental design for an article of manufacture" and not the underlying article of manufacture itself, 35 U.S.C. § 171(a)

12

(emphasis added), the Court need not construe all functional elements of the underlying article of manufacture. See, e.g., Reddy, 60 F. Supp. 3d at 260 (adopting construction reading "[t]he ornamental design for a bathroom vanity light shade, as shown and described in Figures 1-5," without describing functional purpose of a light shade).

Undertaking this analysis as to each of the three features identified by White Mountain in turn, the Court concludes that the designs of those features are primarily ornamental.

### A.  Double Loop

White Mountain first contends that the double loop serves the primarily functional purpose of "enhancing both comfort and functionality[] by holding the strap in place and preventing movement of the tongue." Dkt. 53 at 13. The Court disagrees and concludes that the design of the double loop is primarily ornamental.

The double loop consists of two cut-outs on the clog's vamp (i.e., the upper part of the clog covering the top of the foot). Birkenstock identifies various alternative designs that could serve the same purpose of stabilizing the clog's strap. For example, Birkenstock notes that the strap could be secured by an external attachment other than vamp cut-outs, that the loops could be positioned at different locations on the strap, and that a buckle alone could hold the strap in place. The Court views "the

13

existence of [these] alternative designs" as a strong indicator that the design of the double loop is not dictated by function. Ethicon, 796 F.3d at 1330; see L.A. Gear, 988 F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.").

White Mountain argues that the alternative designs identified by Birkenstock would "not hold a strap in place as well as the 'double loop' feature of the claimed design," Dkt. 60 at 10, and thus that the double loop "represents the best design," any deviations from which "would adversely affect the utility" of the feature, Sport Design, 820 F.3d at 1322 (quoting PHG Techs., 469 F.3d at 1366). But outside of attorney argument, White Mountain fails to show why the double loop design should be deemed "essential to the use of the" clog or its strap. Ethicon, 796 F.3d at 1334. The Court therefore finds White Mountain's argument unpersuasive. Cf. Hupp, 122 F.3d at 1461 (finding a design primarily ornamental where "no significant contrary evidence" was provided by defendant). Further, even if the alternative designs presented by Birkenstock do "not work 'equally well' as the claimed designs," the alternative designs can still be considered if they provide "the same or similar functional capabilities," which White Mountain does not meaningfully contest. Ethicon, 796 F.3d at 1330-31 (quoting Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373,

14

1378 (Fed. Cir. 2002)); cf. Rosco, 304 F.3d at 1378 (noting that the "mere fact that the" claimed design is "superior" to one alternative "does not establish that the design [i]s 'dictated by' functional considerations").

**B.   Back Lip**

White Mountain next argues that the back lip of the clog is primarily functional because it "stabilizes a consumer's foot in the clog by helping to secure the back of the clog above the heel and prevent a consumer's heel from shifting or slipping out of the clog." Dkt. 53 at 13. But Birkenstock again provides various examples of designs other than the back lip that accomplish the same purpose identified by White Mountain. For example, Birkenstock identifies clogs that have wider, narrower, taller, or shorter back lips in various shapes, all of which serve the same purpose of securing a person's foot to the clog. Birkenstock also points out that the same function can be accomplished by using a strap rather than a lip. White Mountain again fails to show that the back lip design of the D257 patent represents the best design or that the alternative designs would be less effective in securing a person's foot.

White Mountain does cite Deckers Outdoor Corp. v. Wal-Mart Stores, Inc., in which a court found an "elastic band connected to the rear of the vamp" to be functional for claim construction purposes. No. 20-cv-09521, 2024 U.S. Dist. LEXIS 153085, at *7

15

(C.D. Cal. Aug. 26, 2024). But in Deckers, the patentee did "not offer any explanation or examples of alternate designs" to the elastic band or even "discuss[] specifically the PHG factors or how they apply" at all. Id. at *6. Here, in contrast, Birkenstock identifies alternate designs to the back lip (and the other design features challenged by White Mountain).

White Mountain also highlights a section of Birkenstock's website that describes the features and benefits of footbeds in various Birkenstock products. As White Mountain notes, the website references the "deep heel cup" of the footbeds, claiming that this feature "[c]radles the heel and keeps natural cushioning right under the heel bone." Dkt. 60-2 at 4. But this deep heel cup is an entirely different feature than the back lip of the D257 patent, and White Mountain does not request that the Court construe as functional any portion of the footbed of the clog design claimed by the D257 patent. White Mountain therefore fails to show that Birkenstock's "advertising touts [the back lip] as having specific utility." PHG Techs., 469 F.3d at 1366 (quoting Berry Sterling, 122 F.3d at 1456). And in any event, the existence of alternative designs -- for which the evidence here is one-sided in Birkenstock's favor -- is the most salient PHG factor. See Ethicon, 796 F.3d at 1330. While the back lip is a closer call than the double loop, the Court concludes that the back lip should not be construed as primarily functional.

16

**C.   Buckle**

Finally, White Mountain asserts that the design of the clog's buckle is primarily functional because the buckle's primary purpose "is to securely fix the clog on a foot" and to "provide[] a . . . secure and tight[] fit." Dkt. 53 at 14. The Court disagrees.

Birkenstock identifies several examples of alternative design features that would accomplish this same asserted function of the buckle. For example, other buckles can take different shapes, can contain a different number of prongs, and can be fastened to different portions of the strap. Other clog designs employ different devices to fasten and adjust the tightness of a strap, such as hook-and-loop fasteners or snaps. As with the double loop and back lip, White Mountain fails to offer any evidence that these alternative designs do not have "the same or similar functional capabilities" as the design of the buckle in the D257 patent. Ethicon, 796 F.3d at 1331 (quoting Rosco, 304 F.3d at 1378).

White Mountain does argue that the alternative buckle designs identified by Birkenstock "should not be considered . . . because the shape of the buckle is linked to the shape of the strap." Dkt. 60 at 13. In White Mountain's view, the design of the buckle in the D257 patent is the only design that could fit the corresponding strap design. Cf. Best Lock Corp. v. Ilco Unican Corp., 94 F.3d 1563, 1566 (Fed. Cir. 1996) (finding the design of a key blade to be dictated by function because if any other design was used, the

17

blade would not "fit into its corresponding lock's keyway"). The Court is not persuaded. Many of the alternative designs presented by Birkenstock include straps of similar rectangular shapes as the strap in the D257 patent, yet also include buckles of different designs -- or mechanisms that are not buckles at all -- serving the same function of securing the strap. White Mountain therefore fails to show that the buckle "must be designed as shown [in the D257 patent] in order to perform its intended function." Id.

## ORDER

For the foregoing reasons, the Court adopts Birkenstock's proposed claim construction: "The ornamental design for a clog, as shown in Figures 1-7." This construction is adopted without prejudice to the parties' raising further arguments regarding functionality at summary judgment or other stages of the litigation, and "without prejudice to [the Court's] ultimate jury instructions on functional versus ornamental elements or any other related factors." Lu v. Hyper Bicycles, Inc., 568 F. Supp. 3d 68, 73 (D. Mass 2021).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge